UNITED STATES, Appellee

v.

JESSE E. MONGE, Private E–1, U. S. Army, Appellant

1 USCMA 95, 2 CMR 1

No. 9

Decided January 8, 1952

1ST LT. Charles H. Taylor, US Army, for Appellant.

MAJ. Augustus A. Marchetti, US Army, and 1ST LT. Eugene L. Grimm, U S Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was found guilty by general court-martial on three specifications alleging larceny in violation of Article of War 93. He was sentenced on May 9, 1951, to a dishonorable discharge, total forfeiture of pay, and confinement for two years. The convening authority approved the findings and sentence, except that the period of confinement was reduced to one year and the Board of Review affirmed on June 27, 1951. We granted the petition for grant of review, directing argument to the question of whether a confession received in evidence over defense objection was voluntary and admissible. The facts, so far as necessary to disposition of the case, are set out briefly below.

During the early morning hours of April 1, 1951, a soldier was observed prowling through the company barracks by a Corporal Pennington, an acting platoon sergeant. He ran from the building, pursued by Pennington and another soldier, and made good his escape. The pursuers then returned to·

their barracks, sent for the military police, and resumed the search. Acting on suspicion, they went to petitioner's barracks at about 0400 and pulled him from his bed, forced him to lie on the floor, held a bayonet at his back, and questioned him concerning the thefts. A military policeman was present during the questioning. While Pennington was questioning petitioner, the other soldier searched his clothes and found a large sum of money. After several questions, petitioner finally admitted that he had stolen the money.

About 1520 on the same day, petitioner was examined by Agent Bongard of the Criminal Investigation Division. Petitioner was warned as required by Article of War 24 that he need make no statement and that anything he might say could be used against him. He was not, however, specifically told that any prior involuntary confession could not be used against him. The agent was not present at the previous questioning and there is nothing to show whether he was or was not aware of petitioner's

previous incriminating statements. No force was used, no promises were given. Petitioner admitted that he was fully advised of his AW 24 rights, but that he was not informed his previous confession could not be used against him, and that he would not have made the second if he had known this. He also testified, variously, that he didn't feel that what he told Pennington could be used against him at the trial, that he didn't fully understand his AW 24 rights at the time of the second confession, that he was not then acting under any fear, that he did not have his first statement in mind, and that, after having made the first confession, it was "no use to deny it" thereafter. It appears that petitioner was 18 years old at this time, had finished the 9th grade in school, had served previously in the National Guard for one year. At the time of the offense, he had served about three months in the Army. His AGCT score was 71, rather low. His character and efficiency, prior to this offense had been graded respectively as satisfactory and excellent.

Since this is the first case to come before us concerning the question of involuntary confessions, it is appropriate that, before proceeding to the specific problem confronting us, we should examine in some detail the basic law on the subject. A deliberate, █ voluntary confession of guilt is among the most effective proofs in the law. The reason that confessions are given such great weight is that the innocent will not imperil themselves by untrue statements. But the very weight given to confessions as evidence of guilt has caused the courts to subject them to careful scrutiny, receiving them with great caution. This feeling has been strengthened by a historical revolt against medieval inquisitorial practices which forced men to convict themselves, by confession, of crimes never committed. Indeed, the practice of punishing manufactured crime is still prevalent in some countries, where individuals are convicted on the basis of confessions wrung from them by physical or mental torture.

It is well known that, since confessions constitute such complete proof of guilt, law enforcement officers are tempted to procure them whenever possible. Honest effort in this direction cannot be criticized, since the police are justified and even under obligation to seek the truth. There is, however, often a tendency to utilize unlawful means to procure confessions in order to avoid the difficult and sometimes impossible job of procuring, piecemeal, direct evidence of every element of the crime. This has, unfortunately, sometimes led to the use of persuasive and even brutal tactics to procure an admission of guilt. Our own criminal system has not been free from such practices. Report of Commission on Lawless Enforcement of the Law (Am. Bar Assn.), 1 Amer. Journ. of Pol. Sci. 575; IV Nat'l Comm. on Law Observance and Enforcement, Reports (1931) Ch. 2, Sec. 4. See statement of facts in Brown v. Mississippi, 297 US 278, 80 L ed 682, 56 S Ct 461; Chambers v. Florida, 309 US 227, 84 L ed 716, 60 S Ct 472; Watts v. Indiana, 338 US 49, 93 L ed 1801, 69 S Ct 1347; Lisenba v. California, 314 US 219, 88 L ed 1481, 1484, 64 S Ct 1208; Wan v. United States, 266 US 1, 69 L ed 131, 45 S Ct 1; Bell v. State, 180 Ark 79, 20 SW2d 618; Enoch v. Commonwealth, 141 Va 411, 126 SE 222. There is, then, even today adequate reason for receiving pre-trial confessions with caution. Nor may we assume that such practices have not found their way into the military criminal system. See United States v. Yakavonis, 77 BR 131; United States v. Hamrick, 72 BR 141; United States v. Huffman, 69 BR 261; United States v. Easterly, 53 BR 335.

Judicial suspicion of pre-trial confessions has led to the universal adoption of a rule that involuntary █ confessions will not be received in evidence against an accused. Many courts have based this rule of exclusion on reasoning that, where the confession is produced by inducements engendering either hope or fear, the accused is deprived of his freedom of will, and the presumption that an innocent man will not convict himself is overcome. The resulting confession is deemed untrustworthy as evidence. This basis for exclusion has been widely adopted in the state courts,

Wigmore, Evidence, Sec. 822, and has been utilized by the Supreme Court. Wilson v. United States, 162 US 613, 622, 40 L ed 1090, 1096, 16 S Ct 895; Wan v. United States, 266 US 1, 14, 69 L ed 131, 148, 45 S Ct 1. The federal courts—and many state courts—have adopted another basis for the exclusion of confessions induced by force—that their use violates the constitutional privilege against self-incrimination. The Supreme Court has thus stated that the language of the Fifth Amendment is, in reality, a "crystallization" of the common law doctrine excluding involuntary confessions. Bram v. United States, 168 US 532, 543, 42 L ed 568, 573, 18 S Ct 183.

We believe that the principles discussed above are equally applicable to military criminal justice. A confession by a soldier or sailor following inducements calculated to arouse either hope or fear is just as untrustworthy in a court-martial as it is in a civilian criminal court. Further, Congress has expanded upon the self-incrimination provisions of the Fifth Amendment by expressly providing for the military that no statement obtained by coercion or unlawful influence shall be received in evidence by a court-martial. It follows from this two-fold basis for the possible exclusion of confessions that even if we believe a confession to be truthworthy and true, we may yet prohibit its use if it was obtained by any coercion or unlawful influence. We may note, in passing, that the very existence of military discipline in the armed forces gives cause for additional suspicion toward confessions given in the presence of military superiors. Congress itself has recognized this factor by expressly requiring that any person obtaining a statement from an accused person shall advise him that he does not have to make any statement, and that anything said may be used against him at trial by court-martial.

To effectuate these policies, there exists the rule that the burden is on the prosecution to prove the voluntary nature of any confession offered in evidence. MCM 1949, p. 157; MCM 1951,

p. 249. The issue of voluntariness, as presented to the trial court, is usually one of fact. Basically, the question is whether the accused possessed, at the time of the confession, "mental freedom" to confess or deny participation in the crime. Lyons v. Oklahoma, 322 US 596, 602, 88 L ed 1481, 1484, 64 S Ct 1208. To fulfill our appellate responsibility, it is incumbent upon us to review independently the circumstances surrounding the allegedly involuntary confession. But where there is disagreement as to whether claimed improper acts actually occurred or where admitted facts permit different inferences, the trial forum is not only better equipped but has the legal duty to weigh the evidence and decide whether the confession is, in fact, voluntary. We must accept the determination of the triers of fact on the question of voluntariness whenever it is supported by substantial evidence, regardless of whether we, as individuals, might resolve the conflict otherwise, or draw different inferences from the facts. If the fact finders could reasonably conclude that the confession was voluntary, then we must affirm.

The question of voluntariness becomes more difficult where, as here, the confession in question was preceded by another, clearly involuntary, confession. The remarks of the Supreme Court on this subject are most appropriate:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantage of having confessed. He can never get the cat back in the bag. . . . In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under the circumstances which preclude its use perpetually disables the confessor from making a usable one after those conditions have been removed." United States v. Bayer, 331 US 532,

540–541, 92 L ed 1654, 1660, 1661, 67 S Ct 1394.

This quotation may serve to explain the basis for the often reiterated rule that the influence of a prior improper inducement is presumed to continue, and, further, that the subsequent confession is presumptively the result of the same influence which affected the prior confession until the prosecution establishes the contrary. This rule is accepted in most jurisdictions. Wharton, Criminal Evidence, Sec. 601; Lyons v. Oklahoma, 322 US 596, 600, 88 L ed 1481, 1484, 64 S Ct 1208; see cases collected in American Jurisprudence, Evidence, Sec. 487, pp. 424–425. But the rule states no more than the practical deduction which may be drawn from the circumstances, aptly stated in the quotation from United States v. Bayer, supra. The question remains one of fact. We may say, legally, that the prior improper influences are "presumed to continue," or we may state, practically, that the effects naturally linger in the accused's mind and that this becomes another factor—to be sure, a weighty one—in deciding whether the subsequent confession was, in fact, involuntary. It is deceptive to say that the prosecution must establish that the improper influences have been dissipated. The continuing effect of the coercive practices must still be determined from all the circumstances. There must be considered, among other things, the mental character of the accused, the nature and degree of the influence, the time intervening between the confessions, and all the circumstances surrounding the subsequent confession in deciding whether the accused possessed that mental freedom required to make the confession voluntary.

Turning to the instant case, we may note briefly the circumstances properly bearing on the voluntariness of the confessions in question. Petitioner was 18 years old, had served in the Army about three months, and had previously been in the National Guard, on inactive duty, for about a year. His intelligence was probably below average, but he was certainly not illiterate. The first confession was oral in nature, consisting of responses made by petitioner to questions of his captors. During the questioning, petitioner was kept in a prone position by the other soldiers, and was threatened with a bayonet. Whether this weapon was used to force the desired answers or to prevent escape is not clear from the record. Present, in addition to the two soldiers who apprehended petitioner, was at least one military policeman, in full uniform with insignia. This occurred about 0400 in petitioner's barracks.

About 1530 on the same day, petitioner was formally interrogated by two Criminal Investigation Division agents. None of those who were present at the prior confession were present during the interrogation. He was advised that he need make no statement, and that any statement he made could be used against him. It does not appear whether the agent knew of the prior confession. No threats were made, no promises were given. No force was applied. Petitioner executed, in his own handwriting, a full statement of the events surrounding the crimes, including some not mentioned in the prior confession. Four days later, petitioner executed the second written statement, in more detail, after having been again advised of his rights to remain silent. Petitioner's testimony on the stand was contradictory and would allow the inference either that he did not consider the first, oral confession when he executed the later statements, or that he gave the subsequent confessions because he had already confessed guilt and felt he had nothing further to lose.

Petitioner does not claim that any improper inducements were offered at the time the written statements were given. The sole basis upon which the contention of involuntariness rests lies in the presumed continuing effect of the force used to obtain the oral admission of guilt. There is little or no conflict concerning the facts—the problem is almost solely concerned with the inferences which may properly be drawn from the admitted facts.

It would require a stronger showing

**99**

than we find here to upset the factual determination by the trial court below. The relation between the earlier and later confessions is not so close that we must say the facts of the former control the character of the latter. We cannot conclude, on this record, that the effect of the prior abuse was so strong as to make unreasonable a conclusion that it did not dominate the mind of the accused to such an extent as to render the subsequent confessions involuntary. The triers of fact had reasonable basis for concluding that the prior improper influences, if any, had been dispelled.

It is, however, argued by appellate defense counsel that the failure to warn petitioner that any prior involuntary confession could not be used against him itself requires exclusion of the confession thereafter obtained. We are referred to several Board of Review decisions which have so held. United States v. Holland, 74 BR 147, 158; United States v. Anderson, 6 BR–JC 311, 330. As already noted, Congress has specifically required that an accused, before being questioned, must be warned of his right to say nothing and of the fact that anything he says may be used against him at trial. The effect of the defense argument is to require an additional warning, not provided by Congress. We are not disposed to add judicially to the warning deemed adequate by Congress unless there are impelling reasons for so doing. We find none here. A general warning that any prior involuntary confession could not be used in evidence would, by itself, be almost meaningless to the average accused. We cannot hold either service personnel generally or criminal investigation agents particularly to a detailed knowledge of the judicial rules concerning the factors which would make a confession voluntary or involuntary.

If an accused be fully aware of his legal right to remain silent, a confession will ordinarily be caused by a desire to tell the truth. We have the Act of Congress and judicial rules, expressed in detail in this opinion, to protect against the situation where he speaks falsely because of prior or present improper inducements. If, in fact, the prior improper influences do continue, words of warning will not have much practical effect. While the presence of a warning such as contended for by defense may well be a factor in deciding that subsequent confessions are, in fact, voluntary, and while we may feel that such a warning is desirable, we cannot conclude that its absence must result in exclusion of a confession. We think this a factor to be considered along with all others in deciding whether the prior improper influences have been dissipated.

Concluding, as we do, that we may not upset the trial court's determination on the basis of the record before us, we must affirm the decision of the Board of Review.

Judges LATIMER and BROSMAN concur.