UNITED STATES, Appellee

v.

RAYMOND A. HOWELL, Airman Third Class,
U. S. Air Force, Appellant

5 USCMA 664, 18 CMR 288

No. 5989

Decided April 15, 1955

Col A. W. Tolen, USAF, and Maj Peter Portrum, USAF, for Appellant. Lt Col Emanuel Lewis, USAF, and Maj Stanley I. Harper, USAF, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

This is an appeal from a conviction ·of larceny, following trial by a general ·court-martial convened at Elmendorf Air Force Base, Alaska. The accused, Howell, was sentenced to be dishonor·ably discharged from the service, to ·forfeit all pay and allowances, and to ·be confined at hard labor for two years. Although intermediate appellate authorities affirmed the findings and sentence without modification, we granted the accused's timely petition for review ·to determine whether his extrajudicial confession was admitted at the trial in violation of the requirements of Article 31, Uniform Code of Military Justice, 50 USC § 602.

II

On May 1, 1954, Staff Sergeant Lewis Hood, a fire station chief at Elmendorf, discovered, on his return from an alarm, that his wallet containing $170.00 was missing. The wallet had been folded within a pair of fatigue trousers which were placed on his bed—and he had given permission to no one to re-

move it. The following morning, an agent of the Office of Special Investigations—one Caribillo—advised the accused of his rights under Article 31, and informed him that he was suspected of larcency.

Subsequently, on May 4 or 5, Master Sergeant Dewey Fincher, the accused's first sergeant, interrogated the latter without further preliminary warning of his rights under this Article. During the interview Sergeant Fincher informed the accused that, if he told the truth, he—Fincher—would attempt to influence the squadron commander to dispose of the matter at squadron level, and stated his belief to be that this effort would meet with success. Fincher did not discuss with the accused the possibility of trial by court-martial, but did inform him that such a proceeding would probably result in a severe sentence.

After a discussion lasting approximately one hour—during which period the accused was permitted to confer with a chaplain—Howell indicated a desire to execute a statement. Thereafter, an OSI agent named Rea, who had been summoned by Fincher, arrived to continue the investigation, and his appearance coincided with the arrival of a Major Britt, the squadron commander. After a brief conversation with the Major, the accused began the preparation of a written statement. However, before its completion Britt and Rea concluded that the investigation should be effected by the latter. Thereupon, Rea accompanied the accused to the OSI district office, where the investigator reviewed the case file for the purpose of acquainting himself with the facts. After advising the accused of his rights fully, Rea obtained the confession which was later introduced at the trial.

Prior to the receipt of this confession in evidence, the law officer advised the accused of his right to testify for the limited purpose of reporting the circumstances surrounding its execution. However, the accused did not elect to testify, and the defense presented no evidence whatever on the question of voluntariness. Over objection by defense counsel that the confession was the result of an unlawful inducement, the law officer admitted the document in evidence. No item of testimony or other evidence relative to the merits of the case was submitted by the defense.

### III

The language of the Manual leaves no doubt that a confession which has been secured through the ■ use of an unlawful inducement is involuntary and inadmissible in evidence. Manual for Courts-Martial, United States, 1951, paragraph 140a. Further, the receipt in evidence of a statement so induced is expressly proscribed by Article 31(d) of the Code. See United States v. Josey, 3 USCMA 767, 14 CMR 185. In determining whether a confession must be rejected as a matter of law under this rule, two conditions must be met: (1) the confession must have been *induced,* and (2) the inducement must have been *unlawful.* Of course, our disposition of the issue presented here must necessarily be controlled to a substantial extent by the conclusions reached by the finders of fact—that is, the court-martial which tried the accused and, at a later time, the board of review. Since the confession was found to be a voluntary one by both of these tribunals, we must accept that determination if it is supported by substantial evidence. United States v. Monge, 1 USCMA 95, 2 CMR 1.

We shall first consider whether the court-martial could have concluded reasonably that Sergeant ■ Fincher's interrogation of the accused did not induce the confession thereafter made to Agent Rea. In resolving this question, we find no conflict in the facts reflected in the record of trial. The accused was interviewed initially—and warned of his rights—by Agent Caribillo on May 2. Approximately three days later, Sergeant Fincher went into the matter further with Howell during the course of an interrogation which was not preceded by an Article 31 warning.

As the questioning progressed, Fincher stated that he would "try to

"handle it at squadron level" through use of his influence with the unit's commander. Under searching cross-examination by defense counsel, Fincher reiterated that he had avoided assiduously any mention of a possible trial by court-martial, and stated that he had expressly conditioned all promises of assistance on a final determination by Major Britt. Additionally, the record shows that the latter—the squadron commander to whom Fincher had referred—participated in the questioning after the accused had agreed to furnish a statement, but it is entirely silent as to what was said by either party during this interview. In any event, a second OSI operative—Agent Rea—was summoned to conclude the investigation. Then, after the accused had indited some four lines of a statement—which, incidentally, was not introduced at the trial—Rea escorted the accused from the Sergeant's presence to the district office of the OSI. Rea testified that on arrival he had reviewed the office file to acquaint himself with the facts of the situation before interrogating the accused. The latter was then advised that he need make no comment, that any he made might be used against him in a trial by court-martial, and that he was suspected of the offense of larceny. After disposing of these preliminary matters, Rea inquired of the accused whether he wished to make a statement. Remarking that "he would like to get it over with," the accused signed a complete confession.

The evidence presented by the Government stands virtually uncontradicted —yet defense counsel at the trial vehemently insisted that the confession was made involuntarily. To uphold such a contention, however, we would be required to engage in the sheerest of speculations. The questioning by Agent Rea was conducted in strict accordance with correct investigative procedures; the accused voiced no sort of objection to the propriety of the interrogation, either at the time it took place or during the trial; and Rea himself was in no manner involved in either of the two earlier examinations.

Certainly the record is without suggestion that the accused was induced to speak *after* the detailed warning given by Agent Rea. Moreover, Sergeant Fincher's promise to make use of his influence with the squadron commander —in the absence of evidence to the contrary—cannot be said to have constituted a promise of immunity, clemency, or substantial benefit within the meaning of the Manual's language condemnatory of the use of such inducements, In short, we find nothing in the conversation between Fincher and the accused which would indicate that the "promise" made by the former was couched in terms sufficiently clear and compelling to have become the moving force behind the confession made to Agent Rea. Certainly the accused— who must have known better than others—did not suggest that he was induced to speak because of anything said by Fincher. He said nothing at all on the subject—nor did any other witness. On the basis of this reasoning, it is obvious that the court-martial could reasonably have concluded that the accused's pretrial confession was not *induced* by the interrogation conducted by Sergeant Fincher. United States v. Monge, supra.

## IV

In holding that the first condition to inadmissibility—namely, that the challenged confession must ▌ have been induced—was not met, we obviate necessity for a discussion of the second. We note in passing, however, that, if an inducement had been shown as a matter of law, the trial forum might reasonably have found that it was not an unlawful one. Fincher's statements to the accused—admittedly calculated to produce the result eventually obtained —nevertheless may well have fallen short of inclusion within the *unlawful* inducement category. It is to be noted that at no point in the interview did Fincher assert that *he* possessed discretion to prevent the accused's trial by court-martial, to impose only company punishment, or to exercise clemency of any nature. Instead, the accused was explicitly reminded that the final determination lay solely with the squadron commander.

In the absence of defense evidence indicating to *some* extent the effect of Fincher's promise upon the accused's mental processes, we are sure that the court-martial's implicit finding that the confession was not unlawfully induced is supported by substantial evidence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.