UNITED STATES, Appellee

v

OLIN E. CUDD, Private E–2, U. S. Army, Appellant

6 USCMA 630, 20 CMR 346

No. 7288

Decided February 3, 1956

First Lieutenant Gene E. Overbeck argued the cause for Appellant, Accused. With him on the brief was Captain Frank C. Stetson.

First Lieutenant Lewis W. Evans argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Thomas J. Newton, Captain Thomas J. Nichols, and First Lieutenant A. Kenneth Pye.

GEORGE W. LATIMER, Judge:

Because the Chief Judge dissents from the concepts which follow, they represent only the views of the author Judge.

Upon conviction of taking indecent liberties with a female child of eleven years of age, with intent to gratify his sexual desires, the accused was sentenced to dishonorable discharge, confinement at hard labor for five years, and forfeitures of all pay and allowances for the same period of time. The convening authority affirmed the findings and sentence, but reduced the period of confinement and forfeitures to three years. The board of review affirmed, and we granted a petition for review to determine whether the law officer erred in admitting into evidence a pretrial statement of the accused.

The nature of the issue permits a general statement of the facts surrounding the substantive offense to be made later, and so, at this point, only those concerning the manner in which the pretrial statement was obtained will be detailed. The substantive offense was committed on or about December 20, 1954. For reasons not disclosed by the record, charges were not preferred until March 3, 1955. Sometime early in February 1955, a sergeant assigned to a military police detachment interrogated the accused. On the morning of the interview, which took place at the El Paso County Court House, the agent had with him a tape recorder to record the questions and answers. Prior to the questioning, the accused had been subjected to investigation by civilian authorities, and, according to the agent, he had refused to discuss the nature of, and facts concerning, the claimed offense. In order to remove all obstacles to accused's freedom of expression, the agent cleared the room of all persons except the two parties to the interrogation. Prior to the asking of any questions, the accused was informed of his rights under Article 31, Uniform Code of Military Justice, 50 USC § 602. Each provision of the Article was explained to him, and he was advised that he need not make any statement concerning the offense. Further, he was informed that if he did, his admission could be used in a trial by court-martial. During the early part of the inquiry, the accused was requested on several occasions to speak in a louder tone of voice so that his answers could be picked up by the recording machine, and during the interview the tape was changed several times. Apparently the accused made some early admissions, but the agent did not meet with the measure of success he had anticipated, and so he adopted the stratagem of telling the accused that any statement made by him would be confidential and kept just between the two parties. The accused thereupon furnished further incriminating details concerning the crime. Unfortunately, I am not provided with any information as to how many of the incriminating circumstances were furnished before the assurance was given that the answers would be kept confidential. The best information that I am able to find in the record is an answer by the agent to the effect that "most of this admission was prior to this part [statement of confidentiality] we are speaking of here."

From the foregoing statement of facts, it is apparent that the first important question to be resolved is whether the accused was warned of his rights in substantial compliance with Article 31(b) of the Code. That subsection is as follows:

"No person subject to this code shall interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

There is no uncertainty about the following facts: That at the outset of the interrogation the accused was notified that he was suspected of an offense;

that he was told its nature; that he was informed he did not have to make any statement regarding the offense; and that if he made any statement, it could be used in evidence against him in a trial by court-martial. Obviously, any information obtained from the accused under those instructions would be admissible, but from that point on the picture is distorted and the critical problem is reached when the agent in effect neutralized the previous warning by his statement that anything said would be kept in confidence. Had I been favored with testimony that the accused relied on that statement or that his incriminating testimony was the product of a belief on his part that it could not be used, then the issue could be resolved in his favor with little difficulty. But the posture of the record is such that I am left uncertain as to the interpretation put on the statement by the accused and whether he was thereby misled as to his rights. He did not take the stand to explain his understanding of the conversation, and I must hazard a guess as to whether he interpreted the assurance of confidentiality as being all-inclusive.

To make my position certain, I inveigh forcefully against the practice of having a Government agent ■■■■■ ■ who is conducting an official investigation warn an accused person that any statement he makes can be used against him in a court-martial and then destroy the effect of that statement by a subsequent declaration that any statement made will be considered secret. For all practical purposes, that amounts to no warning, as the assurance could only be interpreted to mean that the statement would not be used in a subsequent trial. But, in addition, I take the position that when an accused has been fully and fairly warned of his rights and he thereafter talks because of some ruse, there is a burden imposed on him to show that his admission or confession was not only the product of the trick but that involved in the ruse was coercion or a promise which had the effect of negating the previous warning, or which unlawfully induced the statement. Here the law officer found

that the means employed neither coerced the accused nor misled him into believing that Article 31 did not apply and, unless his finding is against the evidence, his ruling must be supported.

Obviously, if I was convinced that, as a matter of law, the accused was led to believe he was required to ■■■■■ ■ make a statement, I would hold the law officer erred in admitting the questioned testimony into evidence. But, considered in a light most favorable to the accused, the promise of confidentiality could not cause the accused to believe that he must talk. Going one step further, if there was evidence which required the law officer to find the accused was assured that the statement would not be available for use by a court-martial, it was error to admit the testimony. This is the crucial issue, and one which must be resolved against the Government, for even though I am operating in an area where the law officer has some discretion in weighing the facts touching on the admissibility of the statement, it is my considered judgment that they preponderate heavily against his ruling. The strongest fact or circumstance supporting his finding is gleaned from the agent's statement that a number of incriminating facts had been disclosed prior to the assurance of secrecy. If the good could be separated from the bad, that statement might be helpful; but I cannot segregate—and neither could the law officer—for the testimony which may have been a foundation for a proper ruling is unknown. The Government possessed a recording of the interview, and it could have established the portion of the evidence which was free from taint. Not having done so, it cannot complain because I find it all inadmissible. Furthermore, it can be asserted that the agent's statement itself establishes that the latter part of the confession is the tainted fruit of the tree of promised secrecy.

Militating against the finding of the law officer is the statement of the agent that his assurance of confidentiality was a necessary part of his tactics to obtain the confession. Apparently he was convinced such a misrepresentation was bait which was required to elicit the

634

desired information. Of course, he testified that he, the agent, concluded the accused understood his rights, but even assuming that conclusion is admissible, it is refuted by the agent's own testimony when he conceded he had to mislead the accused to get the confession. It is worth mentioning that, prior to the time when the statement was made, the agent encountered difficulty in getting the accused to incriminate himself. Thereafter the accused talked willingly. A reasonable inference from such behavior is that the promise of confidentiality nullified the prior warning and led to the disclosure of the incriminatory evidence. That is enough to cause me to hold the law officer erred unless, as the Government asserts, the fact that the accused knew the conversation was being recorded put him on notice that the promise of confidentiality was hollow and would not protect him in the event of trial. I do not believe, however, that knowledge of the presence of a recorder would make it unreasonable for the accused to conclude that the recording would not be used against him, for the agent promised that any information disclosed would be kept confidential between the two participants. Undoubtedly the agent's tactics were intended to mislead the accused into believing that all evidence would remain secret, and, of course, that promise could not be fulfilled unless the transcript was suppressed.

In United States v Payne, 6 USCMA 225, 19 CMR 351, we were faced with a problem somewhat similar to the one confronting us in the present instance. There the investigator worked a ruse by saying, "Man to man, just between you and I, when was the last time you used narcotics?" In that opinion I treated the question in two parts: First, whether there was a failure to warn, and second, whether there was coercion or an unlawful inducement present. All three Judges concurred in the view that there was no unlawful inducement. My associates chose not to grapple with the issue of the effect of the quoted statement on the prior warning, but here that issue must be met head-on. The principal opinion in that case contains the following language:

". . . The argument is not overly-impressive, for the accused was well advised that he need not answer any question and that, if he did, his answer could be used against him. No command status was involved, the parties were dealing at arm's length, and no subsequent promise, express or implied, that any disclosure would be kept confidential, was made. The most that can be said in accused's support is that the investigator may have used a stock 'trick of the trade' to catch him off-guard. But intentional misrepresentations of fact, such as a promise of secrecy, which are not likely to elicit an untrue statement, do not render a confession inadmissible. Fincher v State, 211 Ala 388, 100 So 657 (1924); Flowers v State, 152 Fla 649, 12 So2d 772 (1943); Wigmore, Evidence, 3d ed, § 841."

Conceding the quotation did not announce the law of the Court at that time, I believe it can be applied to the facts of this case, and, when that is done, error is apparent. Here there are facts from which an ordinary person would be lulled into a belief that anything he said would not be used before a court-martial. To make a statement to that effect violates the Code. In addition, I find it a bit inconsistent to hold that an accused is warned adequately of his rights when the agent giving the warning concedes he has told the accused conflicting versions. First the agent tells the accused that the admissions may be used against him and then that they will not be used. While a trick of the trade by Government agents is ██ permissible to obtain a statement, it must be one which is not a flagrant violation of a Congressional enactment. While an investigator may use a trick to aid him in his detection, he cannot adopt a scheme which denies an accused a substantial statutory right. His ruse must be within the law, not without it. Here the stratagem consisted of advising the accused in a manner repugnant to the law, and I cannot hold that

**635**

to be a permissible practice. I, therefore, conclude the subsequent promise effectively nullified the prior warning, with the result that the accused was not warned within the spirit or letter of the Code, and the law officer erred in admitting the confession.

This brings me to the other facet of the issue, whether, when I disregard the incompetent testimony, ▮ the remaining evidence of guilt is compelling. Generally speaking, the evidence shows the accused laid down beside a fully dressed girl under sixteen years of age. He unbuttoned some of the buttons on her blouse and then, without her consent, he placed his hands on the underclothing which covered her body, including what trial counsel suggested was her private parts. There is no dispute concerning any of those facts, and I am forced to conclude that they would compel a finding of guilt on the included offense of assault and battery upon a child under the age of sixteen years. However, the element of indecency, and the intent of the accused to satisfy his sexual desires, must be inferred from the attending facts and circumstances, and I am certain that in those areas the confession had an impact of considerable moment on the court members. Testimony as to the acts of the accused, as described above, was elicited by leading questions and the acts were sketchily described. That situation undoubtedly arises because of the victim's tender years. She was eleven years of age, and most of her testimony was prompted by the use of leading questions. She made no complaint regarding the alleged offense to her older sister who came into the room at the time. At some subsequent date, she complained to her mother, but the date is not fixed. It probably was some considerable time after the incident. At that time it is possible she may have embellished the indecency of the conduct of the accused. That accused was lying beside her with his arm across her body is corroborated by her older sister, but none of the other details are confirmed. Obviously, there are circumstances from which the intent to satisfy lust can be inferred, but they

do not spin a web with certainty, and the confession of the accused contains the only direct testimony of his real purpose and intent. That document forecloses every avenue of doubt, as it discloses clearly that his behavior was induced by a desire to satisfy his own sexual promptings. Under those circumstances, it is most difficult to find that reasonable court members would not be influenced by the confession.

The decision of the board of review is reversed as to the offense charged. In view of the fact that the evidence of assault and battery on a child under sixteen years of age is compelling, I affirm a finding to that effect. The Chief Judge joins in my disposition. The case is returned to The Judge Advocate General of the Army for reference to a board of review for reconsideration of the sentence.

QUINN, Chief Judge (dissenting but concurring in the disposition):

In United States v Josey, 3 USCMA 767, 777, 14 CMR 185, ▮ the majority of this Court said:

". . . Under our interpretation, Article 31(d), in its prohibition against the consideration by a court-martial of statements obtained through the use of coercion, unlawful influence or unlawful inducement, embodies a Congressional intention to remove all doubt that servicemen should have the benefit of all elements of the right against self incrimination guaranteed by the Fifth Amendment. Cf. United States v Monge, supra. In accordance with the holdings of the Supreme Court relating to the protection of that right, we consider that disobedience of the prohibition of Article 31(d) would certainly be generally and inherently prejudicial, and would probably constitute an infringement of military due process. United States v Clay, 1 USCMA 74, 1 CMR 74. Similarly, we feel compelled to conclude that reception in evidence of an inculpatory statement shown to have been obtained through depriving the accused of his 'mental freedom' will necessitate reversal of a

conviction regardless of compelling evidence of guilt other than the statement. Malinski v New York, supra, but see Stein v New York, supra.

"It is urged, however, that such a result need obtain only where particularly offensive instances of 'third-degree' tactics are involved—and admittedly most of the Supreme Court opinions pertaining to the deprivation of due process through use of involuntary confessions have involved claims of marked police brutality. However, we discover no conscious attempt on the part of the Supreme Court to distinguish in this context between coercion, on the one hand, and unlawful influence or inducements, on the other. Consequently, we shall erect no such distinction. Moreover, such a distinction would appear to be illogical—for the reason that as to both coercion and inducements, the issue is the same—that is whether their probable effect in the specific case was to deprive the accused of his mental freedom to choose between speaking and remaining silent. United States v Monge, supra; United States v Colbert, supra. In dealing with so basic a protection as the one against self incrimination, it would be highly undesirable—perhaps unworkable—to attempt to cause results to hinge on the *means* by which the will of the accused was constricted in the making of a statement. Nor in safeguarding this right, would we distinguish between admissions and confessions—once it is established clearly that the statement received in evidence had been unlawfully secured."

In a number of later cases, the Court reiterated the principle that when evidence is admitted in clear violation of Article 31, we need not review the weight of the other evidence for the purpose of affirming the conviction. United States v Holmes, 6 USCMA 151, 19 CMR 277; United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Hernandez, 4 USCMA 465, 16 CMR 39. Consequently, I disagree with that part of Judge Latimer's opinion which propounds a contrary rule.

Turning to the facts of this case, I find no basis for concluding that there was a violation of Article 31. Certainly, there was no coercion, either express or implied. Equally clear is the fact that the accused was fully informed of his rights under the Article and he understood that anything he said could be used against him at a court-martial trial for the offense of which he was suspected. The question then is narrowed to whether the statement was obtained by "unlawful influence, or unlawful inducement." In other words, did the agent's remark, that the accused's further statements would be kept between them, constitute an improper influence or inducement?

The start of our inquiry is whether the influence or inducement is unlawful. United States v Howell, 5 USCMA 664, 18 CMR 288. In my separate concurring opinion in United States v Payne, 6 USCMA 225, 19 CMR 351, I expressed doubt as to whether "under all circumstances" a promise of confidentiality could properly be regarded as beyond the condemnation of Article 31. I specifically related my doubts to a situation in which the accused's commanding officer tells him that if he discloses his complicity in a crime it would remain between them as "man to man." Inasmuch as the commanding officer has the authority to quash a charge against the accused, the statement can be construed as a promise not to prosecute. See: United States v Werthman, 5 USCMA 440, 18 CMR 64. Whether the same inference can be drawn when the person making the promise of secrecy is a known law enforcement agent and the accused understands his rights under Article 31, is a closer question. I need not, however, consider the matter as a theoretical problem. Here, some of the evidence indicates that the promise of confidentiality was not related to the use of the accused's statement at a later court-martial trial.

Agent Johnson testified that the accused was concerned about the publicity given the case. He wanted "to know how this [his statement] would be pub-

637

licized." Agent Johnson then informed the accused that the statement would be confidential. Defense counsel expressly inquired, in his cross-examination, as to whether the accused "could have gotten confused by what you meant by confidential." The agent replied as follows: "I didn't think so, sir. Most of this admission was prior to this part we are speaking of here." In further clarification of the circumstances, he testified on redirect examination as follows:

"Q Do you feel that when you told him that this would be confidential and you shut the door that he felt that you wouldn't even tell it to a court-martial?

A No, sir, he was just reluctant to talk with these people in the room.

Q Is that why you told him it would be confidential?

A Yes, sir. That's why I emptied the room out.

• • • • •

Q Do you think he understood the paragraph about any statements he made could be use against him?

A I think he was well aware of the fact that anything he told me could be used against him, and, if the case did result in a court-martial, would be used.

Q Did you ask him if he understood this Article?

A Yes, sir.

Q Did he ever indicate to you that because of this statement—because it was confidential, at that time, between you two, that he thought you couldn't use it in court? .

A No, sir."

The accused presented no evidence to contradict the agent's testimony. Before the law officer ruled, both counsel specifically argued the question of the meaning and the effect of Agent Johnson's remark that the accused's statement would be confidential. Trial counsel concluded his argument with the contention that the accused understood "that it [his statement] could be used against him in court and he knew that the confidential only meant that they were not going to broadcast this all over the hills of Colorado Springs." There is evidence to support this conclusion. Consequently, I would affirm the law officer's ruling admitting the accused's pretrial statement. United States v Volante, 4 USCMA 689, 16 CMR 263; United States v Dandaneau, 5 USCMA 462, 18 CMR 86. However, in order to effect a practical disposition of the case, I am willing to return it to the board of review for reconsideration of the sentence on the basis of the lesser offense.