UNITED STATES, Appellee

v

JOHN W. DALRYMPLE, JR., Airman Second Class, U. S. Air Force, Appellant

14 USCMA 307, 34 CMR 87

No. 17,008

December 13, 1963

*Major Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

The accused, tried by a general court-martial convened at Carswell Air Force Base, Texas, was convicted of eighteen specifications of forgery, in violation of Uniform Code of Military Justice, Article 123, 10 USC § 923, and sentenced to bad-conduct discharge, forfeiture of $30.00 per month for twelve months, and confinement at hard labor for twelve months. The findings and sentence having been approved by the convening authority and board of review, he sought review here upon a

308

*pro forma* petition in which no specific error was assigned. Cf. Rule 18, Rules of Practice and Procedure, United States Court of Military Appeals. Exercising our authority to notice plain error upon the face of the record, we granted his petition, specifying as the issue:

"Whether the law officer was correct in holding there was no issue of voluntariness in regard to Exhibit 42 (R. 96)."

The exhibit in question is a written confession of the accused, made to an Agent Brackeen, Office of Special Investigations, on July 31, 1962. The law officer ruled that the evidence of the circumstances surrounding its taking did not place the voluntariness of the statement in issue and accordingly refused the request of individual counsel that the court-martial be appropriately advised of its duty in the premises. The propriety of that decision turns, of course, upon the evidence, and we summarize the pertinent matters set forth in the record.

Staff Sergeant Heston E. Dobson, whose name accused allegedly forged, testified that he resided at 206B Isbell Road, Fort Worth, Texas, until his assignment to Carswell Air Force Base was terminated on July 1, 1960. During the period he lived there, Sergeant Dobson was sent an unsolicited credit card from Texaco, Incorporated. He never used the card and, in fact, destroyed it shortly after receiving it.

Nevertheless, after his departure from Fort Worth, he was billed by Texaco for purported purchases of gasoline and oil through use of a credit card. He returned the dun to the company together with an explanation that he had not used the card and had been transferred from the area.

In addition, the Government established that eighteen purchases were made on the basis of a Texaco credit card apparently issued to Sergeant Dobson. These occurred during the period from January 1, 1961, to July 21, 1961. In each instance, Dobson's name was purportedly signed to the delivery invoice, signifying that he had received the products involved and was responsible for the ultimate payment of the account. Apparently, a license number recorded on one of the slips led investigators to the accused, who, subsequent to Sergeant Dobson's transfer, also lived at 206B Isbell Road.

On October 18, 1961, accused was questioned by Special Agent Earle Haley of the Federal Bureau of Investigation, who informed him of the nature of his inquiry, that he had the right to consult an attorney, and generally that "he didn't have to tell me anything, and anything he told me might be used against him." Accused denied having used Dobson's card and informed Haley he knew nothing about the matter. Haley next interviewed accused in February 1962. After again appropriately advising Dalrymple, he obtained an oral statement that the accused had used Dobson's credit card and signed the Sergeant's name to the eighteen invoices in question.

On July 31, 1962, accused was interrogated by Special Agent Bob N. Brackeen, Office of Special Investigations. At the outset, he was advised of his rights under Code, supra, Article 31, 10 USC § 831, and told that he was suspected of forgery. According to Brackeen, accused declared "that he thought this had already been settled." The agent, however, could not recall telling accused that he desired a statement "for the purpose of closing the case" although it was "quite possible I might have said something along that line." Subsequently, accused made a complete, written confession to the offenses of which he now stands convicted.

Accused's former first sergeant, one Vanderleest, testified regarding events which transpired following accused's initial involvement in the investigation. Vanderleest declared that, upon inquiry by the accused, he informed him "as to the progress of the case." In the early part of 1962, he told Dalrymple "we didn't intend to take further action based on the findings we had. Any information we received, the commander and I thought this over, and this is what the man was told; we intended to take no further action."

Accused was so informed after his second interview by Agent Haley and following a decision by the local United States Commissioner against civilian prosecution.

Accused elected to testify in his own behalf concerning the matters affecting his making a statement. According to him, he was twice interrogated by Agent Haley but made no statement at all. He did, however, make the written confession in question to Agent Brackeen on July 31. Prior to being interviewed by Brackeen, several of his superior noncommissioned officers and both his former and present commanding officers had informed him "the case was closed and they weren't going to do anything about it." When Brackeen questioned him, he was properly advised of his rights under Code, supra, Article 31, but also told "they needed the statement to close out the case." Accused understood this to mean "it was finished, there wasn't going to be anything else about it." But for this representation, he would not have confessed.

Upon this evidence, the law officer ruled Dalrymple's statement to be admissible in evidence and that its voluntariness was not placed in issue. He therefore declined a specific request by counsel that the court members be properly instructed on the principles attending its consideration by them. On the basis of the proof summarized above, we disagree with his conclusion and hold the state of the record is such that the voluntariness of the confession was reasonably a question for the fact finders. United States v Gorko, 12 USCMA 624, 31 CMR 210.

Undoubtedly, if an accused is promised immunity from prosecution in return for a confession to  crime, such would, as a general proposition, operate to deprive him of the mental freedom to choose either to speak or to remain silent and thus render his statement involuntary. United States v Johnson, 5 USCMA 795, 19 CMR 91; United States v Howell, 5 USCMA 664, 18 CMR 288; Shotwell Mfg. Co. v United States, 371 US 341, 9 L ed 2d 357, 83 S Ct 448 (1963). The question of voluntariness is one of fact and a "confession must be the product of free choice—of a will not encumbered or burdened by threats, promises, inducements, or physical or mental abuse." United States v Colbert, 2 USCMA 3, 7, 6 CMR 3, 7; United States v Askew, 14 USCMA 257, 34 CMR 37. And, upon the evidence presented to it, the court members could have found that the accused, lulled into a false sense of security by the otherwise unexplained delay in disposing of the case, the repeated assurances by two successive squadron commanders and senior noncommissioned officers that no further action against him was anticipated, and the alleged statement by Agent Brackeen that his confession was needed to "close out the case," admitted his guilt only to eliminate the threat of prosecution which had long been dangling over his head. Upon so finding, it would have been justified in concluding that the accused was wrongfully induced to confess by the strong hope—officially held out—that he would then have heard the last of the matter. Cf. United States v Howell, supra, at page 667. United States v Johnson, supra, at page 801; Wigmore, Evidence, 3d ed, § 836. In light of these allegations, we cannot say—nor could the law officer—that there was no evidence from which it was permissible for the court to infer that accused's confession was not the product of his free will. The matter involved is in the nature of a final cessation of any prosecution in return for the confession. United States v Thompson, 11 USCMA 252, 29 CMR 68; United States v Caliendo, 13 USCMA 405, 32 CMR 405.

Moreover, we point to another aspect of the situation which bears heavily on the question of voluntariness. In seeking to obtain a confession, an agent may not, on the one hand, advise an accused of his right under Code, supra, Article 31, to remain silent, and then destroy the effect of that warning by leading him to believe that any statement given will in fact not be used

against him. United States v Payne, 6 USCMA 225, 19 CMR 351, concurring opinions of Chief Judge Quinn and Judge Brosman; United States v Cudd, 6 USCMA 630, 20 CMR 346; United States v Washington, 9 USCMA 131, 25 CMR 393; United States v Haynes, 9 USCMA 792, 27 CMR 60. And, in the evidence before us, we find a solid foundation upon which the court could have concluded that such was the tactic employed by Agent Brackeen. Thus, there is testimony that Dalrymple inquired of him the reason for the interview in light of previously having been informed no further action was to be taken with respect to the incident. And accused alleges Brackeen replied that the statement was needed only to "close out" the case. The obvious inference to be drawn from such facts, if believed, is that Brackeen was not seeking a confession from accused to be used at a trial by court-martial but simply desired to complete his file in order that the whole matter might finally be put to rest. Thus, in one breath, the accused is told that whatever he says may be used against him and, in the next, that this particular statement will not be so used but will merely repose in some dusty cabinet as the last touch upon an ended case. It was at least open to the accused, in light of the other information he possessed, so to understand Brackeen's alleged comment and, under the circumstances, we believe the question should have been appropriately submitted to the fact finders. United States v Cudd, supra; United States v Washington, supra. We conclude, therefore, that the law officer erred in determining no issue was raised concerning the voluntariness of accused's statement to Agent Brackeen.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.