UNITED STATES

v.

Brian Maurice RICHARDS, 265 53 1665, Disbursing Clerk Third Class (E-4), U.S. Navy.

NMCM 83 1936.

U.S. Navy-Marine Corps Court of Military Review.

22 March 1984.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

LT Mark A. Zuboff, JAGC, USNR, Appellate Defense Counsel.

LT Anita M. Fulton, JAGC, USNR, Appellate Government Counsel.

LT Ronald S. Wasilenko, JAGC, USNR, Appellate Government Counsel.

Before SANDERS, Senior Judge, and MAY and CASSEL, JJ.

PER CURIAM:

Appellant, charged with several offenses, was tried by a special court-martial on 8 and 16 December 1982 and 4 and 13 January 1983 at Naval Legal Service Office, Charleston, South Carolina, and convicted of larceny in violation of Article 121, Uni-

form Code of Military Justice (UCMJ) 10 U.S.C. § 921. He was sentenced by officer and enlisted members to confinement at hard labor for three months, a fine of $1000, reduction to pay grade E–1, and a bad-conduct discharge. The findings and sentence were approved on review below by the convening and supervisory authorities.

This case is now before us pursuant to Article 66, UCMJ, 10 U.S.C. § 866, for consideration of five assignments of error asserted by appellant. We disagree with the contentions raised therein, but shall address the following three errors assigned *seriatim:*

I

PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE FAILED TO SUPPRESS APPELLANT'S CONFESSIONS TO THE CHAPLAIN AND N.I.S.

II

APPELLANT'S CONFESSION TO THE COMMAND WAS NOT VOLUNTARY AND THEREFORE NOT ADMISSABLE (SIC).

III

APPELLANT WAS GIVEN INEFFECTIVE ASSISTANCE OF COUNSEL AT A CRITICAL STAGE OF THE PROCEEDING.

I

This assignment of error presents the question of whether a military chaplain must warn a servicemember of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831, prior to providing counseling in his capacity as clergyman. For the reasons explained below, we reach a negative conclusion in regard to this question.

Defense counsel initially raised this contention at trial in a motion to suppress appellant's confessions to the instant larceny offense made first to a military chaplain and subsequently to the Naval Investiga-

tive Service. Counsel argued that the first confession was inadmissible on the ground that it was not preceded by Article 31, UCMJ, warnings and that the second must be disregarded as derivative of the first. The motion was denied by the military judge. Appellant urges on appeal that this ruling was error.

The testimony of the chaplain, LT. Mary Ellen Summers, Chaplain Corps, who was called as a Government witness on the motion, is for the most part uncontroverted and consistent with that of appellant in regard to a subsequent motion. Appellant, visibly "upset and nervous," conferred with the chaplain, at first stating only that he was concerned with "temptations" caused by his duties as a disbursing clerk on board the USS FRANK CABLE. He later admitted to the chaplain that he was troubled by guilt associated with what he described as his "embezzling" of funds from the ship. Appellant also expressed remorse and a desire to remain in the Navy, but in a different rating. The chaplain suggested that she approach the ship's legal officer with this matter and, without divulging appellant's identity, find out what course of action should be pursued to best effect these desires. Appellant agreed to this plan.

LT Summers, pursuant to the arrangement decided upon by appellant, presented the situation to the legal officer, who was the ship's staff judge advocate. He provided several alternative recommendations, the crux of all being a warning that it would be to the perpetrator's advantage to confess before the offense was otherwise discovered. The chaplain relayed this to appellant, who opted for the alternative which provided for her to report the confession to the command in his behalf. She informed the command of the offense committed by appellant and the command promptly notified the Naval Investigative Service. This action by the chaplain was the first knowledge by the command of the offense. Despite any agency position the chaplain may or may not have assumed in appellant's behalf, since appellant could not have received Article 31, UCMJ, warnings vicari-

ously, no purpose would have been served in administering the advice provided therein at that time. The Naval Investigative Service subsequently obtained appellant's confession to the instant offense after properly advising appellant of his rights pursuant to *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), and Article 31, UCMJ. No cleansing warnings, however, were administered.

The chaplain testified that she did not give Article 31, UCMJ, rights to appellant even after she suspected that he had committed an offense. She was uncertain as to whether she had explicitly informed appellant that their conversation was protected by privilege, but testified that it was her practice to do so under such circumstances. She also testified that she considered the conversation privileged until appellant gave her permission to bring his confession to the attention of the command. According to her testimony, no incriminating statement was made by appellant subsequent to this waiver. It appears that both the chaplain and appellant were under the impression that, while no promises or guarantees were made by the command, the offense would be handled "quietly," presumably at captain's mast.

Article 31, UCMJ, provides in pertinent part:

> No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

■ Contrary to implications which may be derived from a literal reading of this Codal provision, it is established that the warnings prescribed therein are required only when a military accused or suspect is to be interrogated or questioned with an investigatory intent to elicit incriminating responses in anticipation of criminal prosecution. *E.g., United States v. Butner,* 15 M.J. 139 (C.M.A.1983); *United States v. Fisher,* 21 U.S.C.M.A. 223, 44 C.M.R. 277 (1972); *United States v. Gibson,* 3 U.S.C. M.A. 746, 14 C.M.R. 164 (1954). Furthermore, "the Article applies only to situations in which, because of military rank, duty, or other similar relationship, there might be subtle pressure on a suspect to respond to an inquiry." *United States v. Duga,* 10 M.J. 206, 210 (C.M.A.1981). Thus, the enactment of this statute, which has no counterpart in civilian society, reflects a Congressional understanding of the unique environment which emanates from military relationships. As was observed by the Court of Military Appeals:

> Conditioned to obey, a serviceperson asked for a statement about an offense may feel himself to be under a special obligation to make such a statement. Moreover, he may be especially amenable to saying what he thinks his military superior wants him to say-whether it is true or not. Thus, the serviceperson needs the reminder required under Article 31 to the effect that he need not be a witness against himself.

*United States v. Armstrong,* 9 M.J. 374, 378 (C.M.A.1980). *See also United States v. Lewis,* 12 M.J. 205 (C.M.A.1982). In situations where warnings under Article 31, UCMJ, should have been given but were not, the statements elicited are inadmissible at court-martial because such statements, due to a servicemember's duty to obey orders, may be involuntary. *United States v. Lewis, supra* at 208.

■ In our judgment the considerations of concern to Congress in the enactment of Article 31, UCMJ, are not present in the instant case. There was no criminal investigatory purpose in the communication between the chaplain and appellant. The *only* motivation was the conduct of a privileged conversation pursuant to MIL.R.EVID. 503. *Cf. United States v. Fisher, supra* (questioning of servicemember by medical doctor diagnostic in nature and therefore Article 31, UCMJ, warnings unnecessary for admission of statements derived therefrom); *United*

*States v. Foley,* 12 M.J. 826, 832 (N.M.C.M. R.1981) (purpose of medical tests diagnostic, not prosecutorial, and thus admissible despite fact that Article 31, UCMJ, warnings were not given beforehand). From the facts set forth *supra,* it is obvious that their conversation was a privileged confidential communication as it involved a "matter of conscience" within the meaning of MIL.R. EVID. 503. We also specifically find that the privilege was effectively waived when appellant requested the chaplain to go to the command with his confession, *see* MIL. R.EVID. 510, and that appellant released no additional incriminating remarks to the chaplain subsequent to this waiver.

Consequently, the military judge did not err in denying appellant's motion to suppress the challenged confessions. Since the initial statement to the chaplain was admissible under the facts and circumstances of this case, there was no taint caused thereby which would necessitate cleansing warnings prior to the blurted voluntary confession by the chaplain to the executive officer or appellant's "second" confession to the Naval Investigative Service. Therefore, the second confession, which was properly obtained in all respects, was admissible. In so holding, we need not reach the Government's persuasive argument concerning the detrimental effect Article 31, UCMJ, warnings undoubtedly would have upon the clergy-penitent privilege.

## II

Appellant asserts in this assignment of error that his confession to the command was involuntary because he was induced to believe that by confessing to the instant offense he would escape trial by court-martial. He concedes that no promises were extended in this regard, his contention being that, under *United States v. Askew,* 14 U.S.C.M.A. 257, 34 C.M.R. 37 (1963), his misperception of the consequences resulting from the confession is sufficient to render it involuntary. We cannot agree.

■ For an accused's confession to be admissible at trial, it must have been freely given, without the influence of threats, promises, inducements, or physical or mental abuse. *E.g., United States v. Dalrymple,* 14 U.S.C.M.A. 307, 34 C.M.R. 87 (1963), and cases cited therein; Article 31(d), UCMJ. The Court of Military Appeals in *United States v. Askew, supra,* does not purport to expand this long established rule. It is evident from a reading of that case that, while the Court found a "half-guarantee" to effect the voluntariness of the challenged confession, the basis of that decision is directly in line with the multitude of precedent and cases decided thereafter, for the confession induced by the "half-guarantee" was "simply not the product of a free and unfettered choice between speaking and remaining silent." *United States v. Askew, supra* at 263, 34 C.M.R. at 43.

■ The circumstances surrounding the confession by appellant in this case in no way suggest that it was given involuntarily. Appellant did not receive any promises or other unlawful inducement in return for his confessing to the instant offense, nor do we perceive any other impropriety which would cause the confession to be inadmissible. We, therefore, agree with the ruling of the presiding military judge allowing the confession as evidence. The error assigned is hereby rejected.

## III

In this assignment of error, appellant raises the contention that he received ineffective assistance of counsel because of the staff judge advocate's "grossly misleading, negligent and prejudicial" advice on appropriate alternatives in tendering his confession to the instant offense. The initial question for decision, however, is whether, under the circumstances here present, an attorney-client relationship was established between the staff judge advocate and appellant. Our inquiry, therefore, will commence with an examination of that question.

As noted by the Government in its brief, the definition of the term "client" within the context of the attorney-client privilege

is to be found in MIL.R.EVID. 502(b), which, in pertinent part, states:

A "client" is a person, public officer, corporation, association, or other entity, either public or private, who receives professional legal services from a lawyer or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

We recognize that this rule was enacted in conjunction with the attorney-client *privilege* provision of MIL.R.EVID 502(a). Nevertheless, it serves to guide us in reaching the somewhat obvious conclusion that not every conversation between a lawyer and an accused results in an attorney-client relationship. The existence of such a relationship is a question of fact. *United States v. Gandy,* 9 U.S.C.M.A. 355, 26 C.M.R. 135 (1958). It is our belief that the establishment of an attorney-client relationship must, at the very least, be predicated upon the intendment of the accused to enter into it. *Cf. United States v. Brady,* 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957) (where the Court found the creation of an attorney-client relationship to be contingent upon the acceptance of appointed counsel by the accused.).

In the instant case, it is evident from the facts set forth above that appellant's purpose for having the chaplain meet with the staff judge advocate was not to obtain legal services or advice, but to determine the most efficacious manner in which to confess to the instant offense. The staff judge advocate's contact with the chaplain and the recommendations offered by him were exclusively within his capacity as a representative of the command. We, therefore, hold that no attorney-client relationship was established and, following therefrom, that the error assigned is without merit.

Accordingly, the findings and sentence as approved on review below are affirmed.