# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

## v.

## John W. OUIMETTE

## Food Service Specialist First Class, U.S. Coast Guard

## CGCMG 0151

## Docket No. 1117

## 10 February 2000

General Court-Martial convened by Commander, First Coast Guard District. Tried at New Haven, Connecticut, on 13 May 1999.

Military Judge: CAPT Robert Bruce, USCG

Trial Counsel: LCDR Elisa P. Holland, USCG

Assistant Trial Counsel LT JG Andrea Katsenes, USCGR

Detailed Defense Counsel: LT Matthew T. Schelp, JAGC, USNR

Appellate Defense Counsel: LT Sandra K. Selman, USCGR

Appellate Government Counsel LTJG Mark A. Cunningham, USCGR

### BEFORE
### PANEL FOUR

### BAUM, KANTOR AND WESTON

Appellate Military Judges

WESTON, Judge:

Appellant was tried by a general court-martial comprised of a military judge alone. Pursuant to his pleas of guilty, he was convicted of violations of Articles 120, 125, and 134, UCMJ. The military judge sentenced Appellant to a bad conduct discharge, reduction to pay grade E-1, and confinement for 18 months. However, the military judge also recommended that the convening authority suspend 9 months of the confinement. The convening authority, in accordance with a pretrial agreement, only approved confinement of 17 months, reduction to the grade of E-3, and a bad conduct discharge. As also agreed, the convening authority deferred automatic forfeitures under Article 58(b) from 27 May 1999 until 15 July 1999 and then waived those forfeitures for six additional months and directed their payment to Appellant s spouse. In addition, the convening authority suspended all confinement exceeding 12 months for a period of 12 months.

Appellate Defense Counsel has assigned one error on behalf of Appellant under *U.S. v. Grostefon*, 12 M. J. 431 (1992), alleging that the sentence as approved is inappropriately severe. Appellant states that, pursuant to a local regulation at the Navy Consolidated Brig, Charleston, where he is confined, he has been forbidden to have any contact with his sons, either in writing or telephonically, and that his photographs of his sons have been confiscated from him. He further states that he has been repeatedly denied the opportunity to be clinically evaluated and to thereby avail himself of an exception allowed under the Brig regulation. Appellant contends that these restrictions have adversely affected his children. Lastly, he also claims that his further confinement is inappropriate because it does not accomplish any of the purposes identified in *U.S. v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989). Appellant urges that we set aside all remaining confinement in light of the restrictive conditions placed upon him during his confinement, the impacts of that confinement on his family, and the absence of any further rehabilitative benefits from continued confinement.

In its answer, the Government contends that this Court does not have jurisdiction over the claims of Appellant, because the actions of the Brig are not part of the findings or sentence in this case. The Government argues that the Brig s actions are purely administrative in nature and are not subject to the review of this Court. Even if those actions by the Brig were part of the sentence and findings in Appellant s court-martial, the Government argues that they are not subject to our review because Appellant has not exhausted his administrative remedies. Lastly, it contends that Appellant s continued confinement serves a valid purpose in that it furthers the interest of society in obtaining retribution for the serious offenses he committed and also in deterring others from committing similar crimes.

## I.
## BACKGROUND

At the time of trial Appellant was a 37 years old Coast Guardsman with an excellent record after 16 years on active duty. Married, with three sons, Appellant was actively involved with his children in Boy Scouts and church activities. The evidence of record reflects that in addition to a solid record in the Coast Guard, Appellant has devoted a significant amount of his time and energy over the years to

volunteer work in his local community, primarily through scouting and church-centered activities. Those efforts were noted by many of the persons who sent letters on his behalf during the sentencing portion of this case.

In 1997, after being assigned to Coast Guard housing at his new duty station in an isolated community in Long Island, New York, Appellant and his family began helping a neighboring Coast Guard family headed by a single parent. He and his wife regularly cared for their neighbor s three children during their neighbor s frequent absences. They did everything from running errands and transporting their neighbor s children to appointments to providing meals and assuring adult supervision during the several nights each week when their neighbor was not home. Appellant and his wife, in particular, tried to help their neighbor s oldest daughter, C., cope with the added responsibilities placed on her in the absence of her parents. Not surprisingly, the children of both families became very close-knit over time. Unfortunately for all concerned, the friendship and trust that developed between the two families was betrayed when Appellant allowed an inappropriately familiar relationship to develop between himself and the 15 ½ years old C. Appellant encouraged the teenager s crush on him and let it evolve into a sexual relationship. The most serious offenses occurred on three separate occasions over a four-day period, when Appellant engaged in sexual intercourse and oral sodomy with C.

Shortly thereafter, in February 1999, C. revealed the sexual nature of her relationship with Appellant to a school counselor, who immediately informed C. s father. He confronted Appellant with the allegations and later alerted their Command, which promptly initiated an investigation. Upon learning that C. had informed her counselor, Appellant attempted to evade the consequences of his actions and urged C. to recant her statement. However, he ultimately cooperated fully with the Coast Guard investigators and did not seek to minimize the seriousness of his actions, though it is clear that C. was a willing participant and initiated many of their encounters.

Her father testified that C. was extremely depressed and even suicidal prior to the trial due to her emotional distress over the prospect of Appellant being punished by the Coast Guard. Her distress was serious enough to require hospitalization for a month of psychiatric care prior to the trial. Appellant sought to spare C. and both families the further ordeal of a trial on the merits. In addition to pleading guilty to the charges, he agreed not to call C. as a witness for any purpose. At trial, Appellant was earnest in his expressions of remorse. At the conclusion of the trial, the military judge stated that Appellant appeared to have fully accepted responsibility for his actions and that he believed Appellant would not do anything like that again. The military judge also recommended that the convening authority suspend nine months of the sentenced confinement.

Appellant is currently incarcerated in the Navy Consolidated Brig, Charleston, South Carolina, where he was presumably confined after the conclusion of trial in New Haven, Connecticut, on 13 May 1999. We are informed by the filings in this case that in July 1999, the Brig promulgated a local regulation revising its rules regarding contacts and communications with prisoners convicted of sexual offenses. This regulation prohibits visits or correspondence between any prisoner convicted of a sexual offence and any minor, except with the written approval of the Brig Commanding Officer based on the recommendation

of the Brig s clinic and the prisoner s therapist. The same regulation prohibits those convicted of sexual offenses against minors from possessing photographs of minors. The regulation does not attempt to distinguish those prisoners who are unlikely to commit an offense against a minor except to provide for an exception from its prohibitions, nor does the regulation make any special allowance for minors that are members of a prisoner s immediate family. Although the regulation does not explicitly state it, under the regulation as implemented, a prisoner apparently must be enrolled in the Brig s sex offenders treatment program as a precondition to receiving permission to communicate with a minor.

Appellant has personally submitted at least two requests to be evaluated by the Brig s clinic in order to gain permission to communicate with his children, who now reside with their mother in their uncle s home in Holyoke, Massachusetts. Both of Appellant s requests were denied. Appellate Defense Counsel has also attempted to gain permission for Appellant to communicate with his children or to be evaluated so that he can demonstrate that he poses them no risk. Counsel, in a letter dated 5 November 1999, detailed the serious trauma that was being suffered by Appellant s children due to the Brig s severance of all contact between them and their father. She also enclosed a letter from a counselor familiar with Appellant and his family that buttresses the conclusion that allowing Appellant to communicate with them would pose no risk of harm to his children. Appellant s spouse in a letter to the convening authority dated 6 July 1999, has also detailed the distress felt by her sons due to being separated from their father.

In rejecting Counsel s request, the Brig Commanding Officer, in a letter dated 2 December 1999, responded that, "I am unable to support Prisoner Ouimette s request for contact with his children at this time." The letter goes on to note that, "The brig policy states that sex offenders may not correspond with minors without the written approval of the Commanding Officer, based on the recommendation of the Director, Clinical Services and the offender s therapist. The Director, Clinical Services provides input on individuals who are either in treatment or have completed treatment." However, Appellant has not been allowed to enter the Brig s treatment program, evidently because his sentence is not of sufficient duration for him to be enrolled in that program. Consequently, Appellant has not been evaluated by Brig Clinical Services, and the Brig refuses to give him permission to communicate with his children.

The Brig Commanding Officer s letter also stated that, "I may reconsider the request if a mental health provider, preferably with experience in treating victims of sexual abuse clearly recommends it is *necessary* for the children s mental health *and is able to state why the contact is necessary*." [emphasis added]. In our view, the need for Appellant s children to communicate with their father should require no further proof under the circumstances of this case.

We note there is no suggestion whatsoever in this record, nor is there any inference based on the offenses for which he has been found guilty, that Appellant presents any sort of a risk to his children. To the contrary, the record amply demonstrates that Appellant is a loving parent who is unlikely to cause harm to his sons. While the Brig s position might be reasonable if Appellant s children had been victims of abuse by him or if there were some reasoned basis to believe that harm might result from Appellant communicating with his sons, that is decidedly not the case here. Instead, the documents filed with this

Court support the conclusion that the Commanding Officer s implementation of the Brig regulation has harmed the well-being of Appellant s children by cutting them off from any contact with their father.

## II.
### JURISDICTION OVER THE CONDITIONS OF SENTENCED CONFINEMENT

The Government argues that the circumstances of Appellant s confinement are administrative matters beyond the jurisdiction of this Court, citing *Clinton v. Goldsmith, 119 S.Ct. 1538 (1999).* However, terming an action an administrative matter is not a talisman by which the Government may remove a case from our jurisdiction. *See Hollywood v. Yost*, 20 M.J. 785, 790 (CGCMR, 1985). Furthermore, we note that *Goldsmith* dealt with the authority of the Court of Appeals of the Armed Forces to exercise jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), on an appeal filed after Major Goldsmith s petition for extraordinary relief had been denied by the Air Force Court of Criminal Appeals. Final review of his court-martial record had already been completed. 48 M.J. 84, 85 (1998). Further distinguishing that case from the one before us here, *Goldsmith* involved the dropping of a commissioned officer from the rolls of the Service an action that is separate and apart from the imposition of a court-martial sentence.

In contrast, Appellant has complained of conditions imposed upon him in conjunction with his confinement, which arguably increase the severity of his sentenced punishment. Furthermore, Appellant has raised this issue during this Court s statutory review of the sentence under Article 66(c), UCMJ, which charges this Court with: "ǃaffirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." In addition, the cases of our higher Court make it plain that where a record has been made on the issue, prisoners complaints regarding the conditions of their confinement are matters properly within our jurisdiction. *See U.S. v. Miller*, 46 M.J. 248, 250 (1997); *U.S. v. Coffey*, 38 M.J. 290, 291 (CMA 1993). In short, we are not persuaded that Appellant s complaints are beyond this Court s jurisdiction.

## III.
### EXHAUSTION OF ADMINISTRATIVE APPEALS

The Government has argued in the alternative that the principle of exhaustion precludes this Court from addressing the conditions of Appellant s confinement. The Government urges that if this Court finds it has jurisdiction over this subject matter, we must nonetheless require the Appellant to first exhaust his administrative remedies by submitting a formal complaint under Article 138, UCMJ, and pursuing complaints via the Inspector General and his Congressional representatives. Although we think there are good reasons why our Court should have the discretion to consider Appellant s efforts sufficient under the circumstances of this case, our superior court seems to require a contrary result. *Id*. While a complaint to the Inspector General or to Congress are not required by those case precedents, we reluctantly conclude that Appellant must submit a formal complaint under Article 138, UCMJ, in order to exhaust the administrative remedies available to him. *Id*. We therefore decline to act on his complaint

of improper treatment while confined.

Where the circumstances surrounding a prisoner s complaint are "unusual or egregious", we believe it is clear that our Court can consider such matters without requiring the exhaustion of all avenues of administrative appeal. *Coffey* at 291. Although we do not dismiss the seriousness of prohibiting a prisoner from communicating with his children, we have concluded that the Brig s actions in this instance do not rise to the required level of severity, Nonetheless, we find it rather disconcerting that Appellant, who is far-removed from both his parent command and counsel is expected to meet an exacting procedural standard before our Court may consider the merits of his complaint. In our view, fairness demands that before such a precise procedural requirement is imposed on Appellant, there should be some obligation on the Government to make those procedures known to the service member seeking relief. Unfortunately, in our view the case law does not allow us the latitude to fashion such a prerequisite, even though the Brig regulation at issue in this case has imposed restrictions on Appellant s freedom of speech that appear to have no logical relationship to a legitimate governmental purpose. Despite those misgivings, we are not free to act upon Appellant s complaint concerning the conditions of his confinement.

IV.
RESPONSIBILITIES OF THE PARENT COMMAND TOWARD A CONFINED MEMBER OF THE COAST GUARD

As our superior court has observed, " Prisoner complaints are a vexing problem." *Miller* at 249. Given the often-sparse record concerning such complaints, the military appellate courts are at a disadvantage when it comes to resolving them. However, if a prisoner shall be required to run an administrative gauntlet before his complaint can be heard by our Court, then it is all the more imperative that he or she have some assistance available to them in seeking a resolution of any problems that arise during their confinement. This assistance is especially vital since, "There is no clear cut procedure for a military prisoner to follow in order to obtain relief from illegal post-trial confinement." *Id.* at 250. An important opportunity for addressing such complaints is set forth by Coast Guard policy requiring regular communication by the parent Coast Guard command with the Brig and the confined member. Unfortunately, it appears this requirement was not followed in this case.

The Coast Guard Personnel Manual (Commandant Instruction M1000A) directs that the commanding officer of a service member confined as the result of a court-martial is responsible for maintaining contact with the prisoner through physical visitation, when possible. The Personnel Manual notes that the command s interest can spell the difference between "guided rehabilitation and mere warehousing" Article 8.F.6., U.S. Coast Guard Personnel Manual, and it clearly sets forth a policy aimed at rehabilitating convicted Service members. Weekly visits by the parent Coast Guard command are directed in order to "[maintain] personal liaison with both the offender and the brig staff, primarily by visiting the prisoner to provide empathy, sound advice, *and any needed administrative assistance*." *Id.* [emphasis added]. Although the Personnel Manual provides that commanding officers may waive this requirement for physical visitation when it would impose an unreasonable travel burden or cause

operational or administrative burdens, it also notes that: "In such cases, however, the command should maintain a liaison with the prisoner and the commanding officer of the brig by mail, telephone, or both." *Id*.

Based on the Government s filings in response to a query from this Court, it appears that the foregoing policy was not followed. If it had been, the  catch 22  in which Appellant seems to have found himself might have been avoided. We would hope that if a Coast Guard commanding officer or convening authority were aware of a situation such as the Appellant alleges, they would intervene on the member s behalf to ensure a reasonable application of the regulation. Here, the parent Coast Guard command s failure to maintain communication with the Brig and with Appellant has resulted in a lost opportunity to resolve his complaint concerning the overly harsh conditions of his confinement.

V.
CONCLUSION

In summary, this Court is agreed that Appellant has not pursued his administrative remedies to the fullest extent required by binding case precedent, and we are therefore unable to address his complaint concerning the conditions of his confinement. While eschewing a determination of the validity of the Brig regulation itself or the legality of its application to this Appellant, we have nonetheless granted the requested relief for other reasons. By our action below, we have determined that separate and apart from any consideration of the conditions of Appellant s confinement due to the Brig regulation, he should not be required to serve further confinement.

In reaching our determination of an appropriate sentence in this case, we carefully considered the entire record, including the nature of the offenses, the evidence of record concerning Appellant s service to the Coast Guard and in his local community, the military judge s observations concerning the Appellant s acceptance of responsibility for his actions, and the Appellant s expressions of remorse. We have decided that the approved sentence of confinement should not exceed nine months.

Although the dissent implies that our action on Appellant s sentence amounts to a grant of clemency, Article 66(c), UCMJ, requires that we determine the sentence that, "should be approved" based on the entire record. This we have done. In his dissent, Judge Kantor also notes the hospitalization of C. as a consideration supporting approval of a more severe sentence than we have affirmed below. However, C. s distress was in response to the prospect of Appellant being severely punished by the Coast Guard. We do not consider this a reason to affirm a lengthier period of confinement than we otherwise consider appropriate.

After reviewing the record in accordance with Article 66, UCMJ, we have determined the findings to be correct in law and fact, and, on the basis of the entire record, that they should be approved. Accordingly, the findings of guilty are affirmed. The sentence, as approved and partially suspended below, shall be modified. We affirm only so much of the sentence approved below as provides for a bad conduct discharge, reduction to pay grade E-3, and confinement for nine months**.**

Chief Judge BAUM concurs.

KANTOR, Judge (concurring in part and dissenting in part):

I agree with the majority opinion that where an appellant has exhausted his administrative remedies or where there are "unusual or egregious" circumstances involving conditions of post-trial confinement, this Court has the authority to judicially intervene. *United States v. Miller*, 46 M.J. 248 (1997). I further agree that this case does not present us with either situation.

However, since I do not believe any further sentencing relief is warranted in this case, I dissent from that portion of the opinion which further reduces the appellant s period of confinement to nine months.

Relying upon *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982) appellant alleges that any confinement beyond what he has already served when considered in conjunction with the remaining sentence is inappropriately severe. Since this Court has addressed the issue surrounding the conditions of Appellant s post-trial confinement and denied relief on that ground, I will now address the appropriateness of the sentence as adjudged and approved by the convening authority.

As noted in the majority opinion, the military judge sentenced appellant to be reduced to pay grade E-1, to be confined for eighteen months, and to be discharged with a bad conduct discharge. In addition, the military judge recommended that the convening authority suspend nine months of confinement if the appellant maintained good behavior and continued to accept responsibility for his offenses. There is no indication in the record that he has not done so. Subsequently, in accordance with a pretrial agreement with the appellant, the convening authority approved only so much of the sentence as provided for confinement for seventeen months, reduction in rate to E-3 and a bad conduct discharge. The convening authority further suspended all confinement in excess of twelve months from the date of trial for twelve months to be remitted unless sooner vacated. Thus, he did not fully accept the recommendation of the military judge. In addition, the convening authority deferred automatic forfeitures under Article 58b, Uniform Code of Military Justice, 10 U.S.C. § 858b between 27 May 1999 and 15 July 1999 and then waived the same for six additional months and directed payment of the forfeitures to appellant s wife.

Under Article 66, U.C.M.J., 10 U.S.C. § 866, this Court s responsibility in reviewing a sentence approved by the convening authority is to affirm only so much as we find correct in law and fact and determine should be approved. In determining this function, this Court is not authorized to exercise clemency, which simply involves bestowing mercy. *United States v. Healy*, 26 M.J. 394, 395-96 (C.M. A. 1988) and *United States v. Duckworth*, 45 M.J. 549, 551-52 (C.G. Ct. Crim. App. 1996). Rather, we are obligated to give individualized consideration to an appellant, a process that includes assessing the nature and seriousness of the offenses and the character of the appellant s service. *United States v. Snelling*, 14 M.J. 267,268 (C.M.A. 1982).

In this case, I do not dispute the appellant s many years of honorable service. At the same time, I cannot

minimize the seriousness of the offenses he committed. Appellant, age 37 and married with three children, engaged in a highly inappropriate, month-long relationship with a fifteen year old girl, C., that eventually escalated to acts of oral sex and sexual intercourse. Aggravating the situation, C. was the daughter of a single-parent Coast Guardsman who, because of difficult circumstances, relied upon appellant and his wife for assistance in supervising C. and two other younger daughters. Regrettably, this trust between two "shipmates" assigned to the same unit was shattered by the appellant when he engaged in the aforementioned sexual misconduct. Furthermore, when the situation came to light, appellant not only encouraged C. to lie about the relationship but also advised her to have sexual intercourse with her boyfriend to help mask their own relationship. She complied. Finally, this entire episode indirectly led to C. being hospitalized for one month for psychiatric reasons.

These facts, along with the actions by the convening authority, convince me the appellant received individualized consideration. The convening authority reduced the period of unsuspended confinement to twelve months and he also took action to assist the family s financial condition. Further indication of the appropriateness of the sentence is the appellant s own pretrial agreement where he agreed to a confinement limitation of seventeen months. *See United States v. Hendon*, 6 M.J. 171 (C.M.A. 1979). Based on the foregoing, I do not feel the sentence, as approved by the convening authority, is inappropriately severe or merits a further reduction to nine months.

---

For the Court,

//s//

J. H. BAUM
Chief Judge