# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant RAFAEL VERDEJO-RUIZ
### United States Air Force

## ACM 37957 (recon)

## 14 August 2014

Sentence adjudged 25 February 2011 by GCM convened at Tyndall Air Force Base, Florida. Military Judge: W. Thomas Cumbie.

Approved Sentence: Dishonorable discharge, confinement for 25 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Shane A. McCammon (argued); Major Scott W. Medlyn; and Captain Michael A. Schrama.

Appellate Counsel for the United States: Major Daniel J. Breen (argued); Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

WEBER, Judge:

At a general court-martial composed of officer and enlisted members, the appellant was convicted, contrary to his pleas, of one specification each of rape of a person between the ages of 12 and 16; carnal knowledge with a person between the ages of 12 and 16; forcible sodomy of a person between the ages of 12 and 16; and indecent acts upon the body of a female under the age of 16, in violation of Articles 120, 125, and 134, UCMJ, 10 U.S.C. §§ 920, 925, 934. He was sentenced to a dishonorable discharge,

confinement for 25 years, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority did not approve the adjudged forfeitures, but otherwise approved the sentence as adjudged.[1]

On appeal, the appellant raises 11 issues:  (1) the military judge erred by denying his motion to suppress involuntary statements made after law enforcement agents promised him confidentiality; (2) his convictions are factually insufficient; (3) the Article 134, UCMJ, specification fails to state an offense; (4) trial counsel committed reversible error by making false assertions of material fact and by prosecutorial misconduct; (5) his Fifth[2] and Fourteenth[3] Amendment rights were violated when the alleged victim committed perjury and fraud on the court during her testimony; (6) the findings and sentence should be set aside under the cumulative error doctrine; (7) the United States Disciplinary Barracks' (USDB) refusal to allow him visitation with his children is illegal considering (a) he did not commit any offense against his own children, (b) he was issued a meritless no-contact order, and (c) the USDB administrative system improperly lists him as single with no dependents; (8) his court-martial wrongfully included charges of carnal knowledge and indecent acts; (9) the Government and the military judge improperly denied the defense the ability to review the victim's mental health and medical records; (10) the military judge's findings instructions erroneously stated the burden of proof required to demonstrate force; and (11) he is entitled to relief for untimely appellate review.[4]

---

[1] The convening authority's action states, in relevant part:

> In the case of [the appellant], only so much of the sentence as provides for a dishonorable discharge, confinement for 25 years, and reduction to the grade of Airman Basic (E-1) is approved and, except for the dishonorable discharge, will be executed, but the execution of the first six months of that part of the sentence extending to forfeiture of total pay and allowances is suspended for six months, at which time, unless the suspension is sooner vacated, the suspended part of the sentence will be remitted without further action.

The action then noted that the adjudged reduction in rank and forfeiture were deferred 14 days from the date the sentence was adjudged until the date of the action.  The action also waived mandatory forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b.  Therefore, the first part of the action's first sentence excludes the total forfeitures from approval, while the second half of the first sentence purports to suspend execution of the adjudged forfeitures.  The appellant did not raise this as an issue, and both parties' appellate filings clearly indicate their understanding that the adjudged forfeiture was not approved.  The court-martial order accurately reflects the language of the convening authority's action.  For clarity's sake, we explicitly find that the convening authority's action unambiguously disapproved the adjudged forfeiture.  *See United States v. Wilson*, 65 M.J. 140 (C.A.A.F. 2007).

[2] U.S. CONST. amend. V.

[3] U.S. CONST. amend. XIV.

[4] Issues 4, 5, 6, 8, 9 and 10 were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982).  This Court's original opinion addressed issues 1 through 8.  In supplemental assignments of error submitted to this Court upon reconsideration, the appellant re-raised some but not all of the previously submitted issues and raised new issues 9 through 11.  It is not clear why the appellant re-raised some but not all of the previously submitted issues.  This Court has analyzed all 11 issues, regardless of whether the appellant elected to re-raise them.

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning (25 June 2013).

On 18 July 2013, we issued a decision in which we dismissed a charge and specification, but affirmed the remaining findings and the sentence as approved by the convening authority. *United States v. Verdejo-Ruiz*, ACM 37957 (A.F. Ct. Crim. App. 18 July 2013) (unpub. op.). This Court issued its opinion after hearing oral argument on the appellant's first assigned issue, dealing with the defense's motion to suppress statements the appellant made after law enforcement agents purportedly promised him confidentiality. Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of that panel. The appellant then filed with this Court a motion to vacate and petitioned our superior court for review. On 12 November 2013, our superior court converted the appellant's motion to vacate into a motion for reconsideration. *See United States v. Verdejo-Ruiz*, 73 M.J. 109, No. 14-0010/AF (Daily Journal 12 November 2013). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2013), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges, and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant actually filed two supplemental errors, raising three issues not previously before this Court. We also granted the appellant's motion for oral argument on the same issue previously argued to this Court. On 24 June 2014, well after the deadline for supplemental briefs to be submitted in this case and after oral argument, the appellant moved for leave to file yet another supplemental assignment of errors, alleging he received ineffective assistance of counsel. Given that this Court had repeatedly allowed the appellant to raise additional issues out of time during the lengthy appellate processing of this matter, and given that the appellant made no attempt to explain why this latest issue could not have been raised earlier, we denied the appellant's motion to submit this latest supplemental assignment of errors.

With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings, oral argument, and the previous opinion issued by this Court.

*Background*

The charged acts took place in or around July 2004. At that time, then 13-year-old CL visited with family members in Oklahoma. She resided with her grandparents, but she frequently visited her step-father's cousin, Mrs. LV, and Mrs. LV's husband, the appellant. She sometimes spent the night at the appellant's home and considered herself to have a close relationship with Mrs. LV. CL helped Mrs. LV and the appellant prepare for their wedding ceremony at the end of July, which would formally celebrate their marriage that took place two years earlier.

During the days leading up to the wedding ceremony, CL stated the appellant committed four sexual acts against her, all contrary to her will. Three such incidents took place in the house, either when Mrs. LV was sleeping or not home. The final such incident took place the night before the wedding ceremony, when the appellant took CL away from decorating for the reception and engaged in sexual intercourse with her in his car.

CL did not tell anyone about these acts until approximately six years later, when she confided in a friend and then a family member. The Air Force Office of Special Investigations (AFOSI) was notified of the allegation and investigated the matter.

Further facts relevant to each assignment of error are discussed below.

*Appellant's Motion to Suppress Involuntary Statements*

AFOSI agents interviewed the appellant. The interview was videotaped and transcribed. The agents read the appellant his Article 31, UCMJ, 10 U.S.C. § 831, rights from a printed card and allowed him to read along. The appellant acknowledged his rights, declined a lawyer, and agreed to answer questions. After a rapport-building session, the agents confronted the appellant about an allegation that he sexually assaulted CL. The appellant initially maintained that he did not remember doing anything sexual with CL because it was a long time ago, but eventually admitted that he "did commit a stupid action" in that he "was going to sleep with somebody." The appellant eventually stated that he cheated on his wife but could not remember with whom he did so.

After more questioning, the appellant admitted that he had sex with someone in his Cadillac, and it was either CL or a Senior Airman named Amanda. Eventually, after additional prodding, the appellant admitted that it was CL whom he had sex with in his car. In his post-interview written statement, the appellant wrote that he "ran out in [his] car with [CL] and had brief intercourse inside the car." He also stated that he was going to tell his wife about the incident until he learned of CL's age. The appellant only admitted to having sex with CL on the one occasion in his car and to kissing her a few times after being "seduced." He denied any other sexual misconduct toward CL.

At trial, the defense motioned to suppress the confessions, asserting the appellant's statements were the result of a promise of confidentiality by the two AFOSI agents. The appellant pointed to five specific examples of such promises:

- "Like I said, what you say here stays with us. We don't go around telling everyone what you say and everything else."

- "You don't have to worry about anything you say with us. Like I said, we are not trying to throw you up by a stake or anything else."

- "Everything that stays in this room, stays in this room."

- "I am not going to tell your wife about it either, you know. . . . I am not going to tell anybody. . . ."

- "See, the thing about our office here is when we talk to people, we don't share information with other people."

In support of the motion to suppress, the appellant testified that these comments convinced him that no matter what he said to the AFOSI agents, they would keep it to themselves. He further testified that he believed the AFOSI agents would only submit a report to his commander indicating whether he was being honest, and nothing more. According to the appellant, he believed the agents promised him confidentiality, so he merely agreed with the allegations in order to leave the interview and get on with his life.

The military judge denied the motion and issued findings of fact. Regarding the appellant's testimony, the military judge stated: "The court finds this testimony to be totally, completely, and unequivocally without merit." The military judge acknowledged the possibility that the agents' statements, standing alone and taken out of context, might have reasonably implied a promise of confidentiality. However, he found that when taken in the context of the entire conversation and under the totality of the circumstances, the agents' statements implied no such promise. The military judge noted that three of the statements were made in response to the appellant's concern about his wife learning of the details of his infidelity with CL and therefore amounted to assurances merely that the agents would not tell the appellant's wife what he said. Additionally, the military judge viewed the other two statements as "tiny snippets of a lengthy discourse by the agents, which given the context of the conversation, could not reasonably be construed as a promise of confidentiality." The military judge also noted that the appellant's own statements during the interview demonstrated his awareness that disciplinary action could result from his admissions, such as his question to agents about whether this matter was "a court-martial thing." Ultimately, the military judge concluded that "the defense . . . cherry picked five very short innocuous statements . . . . [which] taken individually, or

collectively, cannot reasonably be construed as a promise of confidentiality." The appellant challenges this ruling on appeal.

A military judge's decision to deny a motion to suppress evidence is reviewed for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

> "Abuse of discretion" is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law. Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.

*Id.* (internal quotation marks and citations omitted).

Generally, a confession is not admissible unless it has been made voluntarily, considering the totality of the circumstances surrounding the confession. *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991); Mil. R. Evid. 304(a). Military justice jurisprudence has long held that a statement made in response to a promise of confidentiality by law enforcement agents may be inadmissible, because the promise of confidentiality nullifies the rights advisement under Article 31, UCMJ. *United States v. Cudd*, 20 C.M.R. 346, 352 (C.M.A. 1956). A rights advisement followed by a promise of confidentiality "amounts to no warning, as the assurance could only be interpreted to mean that the statement would not be used in a subsequent trial." *Id.* at 350. Statements made in response to a promise of confidentiality are inadmissible, despite the provision of a rights advisement, where the promise "induce[s] a belief in the mind of the accused that his disclosure will not be made the basis for a criminal prosecution." *United States v. Washington*, 25 C.M.R. 393, 395 (C.M.A. 1958). Even an implied promise of confidentiality may render a confession inadmissible if it is "the causative factor for . . . later confessions." *United States v. Green*, 35 C.M.R. 272, 276 (C.M.A. 1965).

Promises of confidentiality are substantially similar to promises of testimonial immunity. *See United States v. Lonetree*, 35 M.J. 396, 401–02 (C.M.A. 1992) (analyzing promises of confidentiality and immunity under the same framework). If an official with either express or apparent authority promises a suspect that no prosecution will result if the suspect confesses, courts will not hesitate to enforce that promise. *United States v. Churnovic*, 22 M.J. 401, 405 (C.M.A. 1986). Promises of confidentiality or immunity made without authority are forms of unlawful inducement. *Lonetree*, 35 M.J. at 402. "A confession is involuntary, and thus inadmissible, if it was obtained . . . through the use of unlawful inducement." *Freeman*, 65 M.J. at 453 (internal quotation marks omitted) (citing Mil. R. Evid. 304(a), (c)(3); Article 31(d), UCMJ).

Under *Freeman*, "promises are considered only a factor in the equation; they are not of themselves determinative of involuntariness." *Id.* at 455. "In determining whether a defendant's will was over-borne in a particular case," we assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* at 453 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Factors taken into account in determining voluntariness include the accused's age, level of education, and intelligence, along with any advice provided to the accused concerning his constitutional rights, the length of detention, the nature of the questioning, and the use or absence of physical punishment such as the deprivation of food or sleep. *Id.* (citations omitted).

We have reviewed the record of trial, including the written submissions on this issue at trial and on appeal, the video recording of the confession, the transcript of the interview, and the appellant's written confession. We have also considered oral argument on this issue. Our review leaves us firmly convinced that the military judge did not abuse his discretion when he denied the appellant's motion to suppress his confession.

We find no promise of confidentiality made by AFOSI agents. We acknowledge, as did the military judge, that some of the agents' comments, taken in isolation, could be read to constitute a promise of confidentiality or immunity.[5] The individual statements the appellant cites should not be held up as a model for other agents to follow, and in a different setting, might constitute a promise of confidentiality or immunity. However, we agree with the military judge that when taken in the context of the totality of the circumstances, most if not all of the agents' statements were made in response to the appellant's concerns about his wife finding out about his actions.[6] A fair reading of the entire transcript and an unbiased viewing of the video recording indicates that the agents' comments were not reasonably viewed as general commitments that the agents would forever keep the appellant's statements in confidence, never to be revealed to anyone. Rather, they were poorly-worded assurances that they would not broadcast his statements to anyone without a need to know the information, including the appellant's wife.

The appellant's own statements indicate his awareness that his statements could be used against him. Toward the end of the interview, he asked agents if this matter could

---

[5] In addition to the comments cited by the appellant, we also point out the following statement by one of the agents:

> [R]ight now this is where the crossroad is. You need to make that decision of which way you are going. This is where you have the option to A), *go on and save your career and have a long living career*; or B), you can lie to me and you are going to watch your career flush down the toilet.

(emphasis added).

[6] The appellant's concern about his wife finding out about his extra-marital sexual conduct with an underage relative is reflected in the record of trial. When the appellant's wife testified in findings on his behalf, she admitted that she did not know that the appellant confessed to having sexual intercourse with CL until shortly before trial, when trial counsel informed her of the appellant's admissions.

be treated as a court-martial, and he also said that he might need a break to smoke if he was "being handcuffed out of [the interview]." Throughout the interview, the appellant grudgingly disclosed more and more information as he was confronted with the absurdity of his statement that he had sexual intercourse with someone on the eve of his wedding, but could not remember who his partner was. Even when he admitted to having sexual intercourse with CL in the car, he denied other allegations of sexual misconduct. The appellant was well aware that any statements he made could be used against him. We agree with the military judge that the appellant lacked credibility in his contention that he believed agents would only submit a report to his commander indicating whether he was being honest and nothing more. Apart from the inherent improbability of such a belief by a noncommissioned officer who had been in the Air Force for more than 10 years at the time of the interview, the appellant's lack of credibility in his motions testimony clearly presents itself through the transcript.

We find agents made no promise of confidentiality and therefore the appellant's statements were voluntary under the totality of the circumstances. We find no abuse of discretion in the military judge's denial of the defense's motion to suppress the appellant's statements to AFOSI agents.

*Factual Sufficiency*

The appellant also avers that his convictions for rape, carnal knowledge, forcible sodomy, and indecent acts with a child are factually insufficient.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

Having reviewed the entire record, including the appellant's confession and the victim's testimony, we are convinced the appellant's convictions are factually sufficient.[7] CL provided detailed and believable testimony about the events that transpired, and the appellant's confession corroborated some of her testimony. Despite attempts to do so, the defense was not able to establish any material contradictions or inaccuracies in her

---

[7] Though not specifically raised, we also find that the appellant's convictions are legally sufficient. *See United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002); *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987).

testimony. We agree with the members that the appellant is guilty of the charged offenses.

*Failure to State an Offense*

Notice of the terminal element of an Article 134, UCMJ, offense is an essential part of due process, as an accused must know and fully understand the offenses against which he must defend. *See United States v. Humphries*, 71 M.J. 209, 216 (C.A.A.F. 2012); *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011). Whether a charge and specification state an offense and the remedy for such error are questions of law that we review de novo. *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012). "A specification states an offense if it alleges, either expressly or by [necessary] implication, every element of the offense, so as to give the accused notice and protection against double jeopardy." *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)); Rule for Courts-Martial 307(c)(3).

Charge III and its Specification alleged a violation of Article 134, UCMJ, in that the appellant committed indecent acts upon the victim, a female under the age of 16, not his wife, by committing certain acts upon her with the intent to gratify his sexual desires. The Specification did not allege one of the three possible clauses of the terminal element: prejudice to good order and discipline, service discrediting, or a crime or offense not capital. The appellant did not contest the wording of the specification at trial.

Because the appellant did not object to the missing element at trial, we analyze this case for plain error and in doing so find that the failure to allege the terminal element was "plain and obvious error that was forfeited rather than waived." *See Humphries*, 71 M.J. at 215. In the context of a plain error analysis of defective indictments, the appellant has the burden of demonstrating that: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *Id*. at 214 (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)) (internal quotation marks omitted). "[I]n the plain error context[,] the defective specification alone is insufficient to constitute substantial prejudice to a material right." *Humphries*, 71 M.J. at 215 (citing *Puckett v. United States*, 556 U.S. 129, 142 (2009); *United States v. Cotton*, 535 U.S. 625, 631–32 (2002)). Therefore, reviewing courts "look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Id*. at 215–16 (quoting *Cotton*, 535 U.S. at 633; *Johnson v. United States*, 520 U.S. 461, 470 (1997)). If this is the case, the charging error is considered cured and material prejudice is not demonstrated. *Id*. at 217.

The only mention of any of the clauses of the terminal element during the trial was by trial counsel during closing arguments when, after recounting the facts alleged in the

Specification, he argued to the jury that, "It should take you about five seconds to realize that committing these horrible acts on an Air Force Installation on a 13-year-old child is prejudicial to good order and discipline in the United States Air Force." The defense did not address this point.

Our superior court has specified that identifying a theory of criminality during closing argument alone does not constitute sufficient notice to find a lack of prejudice from omission of the terminal element on the charge sheet. *United States v. Goings*, 72 M.J. 202, 208 (C.A.A.F. 2013). Because notice of the missing element is not "somewhere extant in the trial record," as required by *Humphries*, it was plain and obvious error to omit the terminal element from the Specification alleging indecent acts under Article 134, UCMJ. That error prejudiced the appellant's right to notice. Accordingly, we dismiss the finding of guilty for Charge III and its Specification.

*Prosecutorial Misconduct and Perjury*

We have considered the appellant's fourth and fifth assigned errors, raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982), and find them meritless.

We have reviewed the appellant's claim of prosecutorial misconduct under the standards of *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013), *United States v. Edmond*, 63 M.J. 343, 347 (C.A.A.F. 2006), and *United States v. Argo*, 46 M.J. 454, 457 (C.A.A.F. 1997). We have paid special attention to the "overall effect of counsel's conduct on the trial, and not counsel's personal blameworthiness." *United States v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003). Having examined trial counsel's conduct as well as the fairness of this trial, we find no merit in the appellant's claim.

The appellant claims the victim committed perjury, pointing to statements in the Article 32, UCMJ, 10 U.S.C. § 832, investigation which he claims could be used to contradict her. He then relates this back to his argument that the evidence was insufficient to support a conviction. We have already addressed the issue of factual sufficiency and there is no need to rehash it. Trial defense counsel subjected CL to a vigorous cross-examination. The members believed her, and we are similarly convinced by her testimony and the other evidence in the record of trial, to include the appellant's confession. We find no merit to the appellant's claim.

*Cumulative Error*

The appellant avers that cumulative errors occurred at trial that should compel us to set aside the findings and sentence. In this argument, the appellant raises eight errors he alleges transpired during trial, some with several subparts.

As our sister court observed, we "evaluate the fairness of the appellant's trial using the cumulative error doctrine." *United States v. Parker*, 71 M.J. 594, 630 (N.M. Ct. Crim. App. 2012) (citing *United States v. Dollente*, 45 M.J. 234, 242 (C.A.A.F. 1996); *United States v. Banks*, 36 M.J. 150, 171 (C.M.A. 1992)). As the *Parker* Court stated, *Dollente* requires us to evaluate the errors

> [a]gainst the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the [trial] court dealt with the errors as they arose (including the efficacy—of any remedial efforts); and the strength of the government's case.

71 M.J. at 603 (second alteration in original).

Some of the errors alleged by the appellant include supposed errors by the military judge in his instructions, misstatements of the evidence by the prosecutor, the denial of the right to an educated jury due to the prosecutor's failure to present expert testimony on child behavior that would favor the appellant's case, and that a testifying AFOSI agent was allowed to give human lie detector testimony. We have reviewed the appellant's allegations and find no error. Rather, we find rulings and decisions made well within the sound discretion of the military judge. There was ample evidence of the appellant's guilt and there were no errors that materially prejudiced his substantial rights. Under these circumstances, the appellant was not denied a fair trial, and the cumulative error doctrine is not applicable. *See United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011); *Dollente*, 45 M.J. at 242.

*Visitation Rights*

Citing *United States v. Ouimette*, 52 M.J. 691 (C.G. Ct. Crim. App. 2000), the appellant claims the USDB's refusal to allow him visitation rights with his children illegally constituted a "harsher [and] excessive sentence and punishment" because (1) he did not commit any offense against his own children, (2) he was issued a meritless no-contact order, and (3) the USDB administrative system improperly lists him as single with no dependents. The appellant submitted documents indicating he is under a blanket restriction from having any visitation and from making any contact with his own children (even indirectly through contact via his wife).[8] He sent a request to the USDB Commandant for an exception to this policy but was denied. He filed a complaint with the Inspector General, and although he states he has filed a complaint pursuant to

---

[8] The United States Disciplinary Barracks' regulations prevent him from seeing any children without first obtaining an "exception to policy."

Article 138, UCMJ, 10 USC § 938, the record lacked any other indication or evidence of this assertion.[9]

We review allegations of cruel and unusual punishment de novo. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006). As our superior court noted:

> [T]he Eighth Amendment prohibits two types of punishments: (1) those "incompatible with the evolving standards of decency that mark the progress of a maturing society" or (2) those "which involve the unnecessary and wanton infliction of pain." We apply the Supreme Court's interpretation of the Eighth Amendment in the absence of any legislative intent to create greater protections in the UCMJ.

*Id*. (citations omitted). Except for specific situations not applicable to this case, Article 55, UCMJ, 10 U.S.C. § 855, is coterminous with the Eighth Amendment,[10] and we will apply that standard to both provisions. *See United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F. 2007); *United States v. Matthews*, 16 M.J. 354, 368 (C.M.A. 1983).

> A violation of the Eighth Amendment is shown by demonstrating:
>
> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [the appellant's] health and safety; and (3) that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ.

*Lovett*, 63 M.J. at 215 (omission in original) (footnotes omitted).

Applying these standards, we find no violation of the Eighth Amendment or Article 55, UCMJ. The appellant's complaint does not amount to a serious act or omission resulting in a denial of necessities. Typically, such serious acts or omissions include matters such as denial of needed medical attention, proper food, sanitary living conditions, or even physical abuse. *See United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000). The appellant's deprivation is more akin to routine conditions associated with punitive or administrative segregation such as restriction of contact with other prisoners, of exercise outside a cell, of visitation privileges, of telephone privileges, and/or of reading material. *See Id*. at 102. We also note that not all visitation or outside contact was withheld from the appellant, just a certain segment of it. This partial, rather than full,

---

[9] Our July 2013 decision noted the absence of any indication or evidence that the appellant filed a complaint under Article 138, UCMJ, 10 U.S.C. § 938. Despite submitting voluminous filings in this case, the appellant still has not provided any such proof that he filed such a complaint. Even assuming he has submitted such a complaint, our conclusion on this matter remains the same.

[10] U.S. CONST. amend. VIII.

restriction on the appellant's ability to communicate with friends and family also supports the Government's case. *See Turner v. Safley*, 482 U.S. 78 (1987); *Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004). Also, the appellant has not shown the Commandant acted with a culpable state of mind. He did not arbitrarily select the appellant and deny him contact with minors. He was merely enforcing the USDB's rules.

We emphasize that the USDB rules about visitation with children are enforced for the protection of minors. That the appellant has to undergo a strict screening policy before being granted permission to visit his children is an administrative safeguard to protect minor juveniles from those convicted of child sex crimes. It is not an additional punishment or a method of enhancing the sentence already adjudged. Accordingly, we find no merit to the appellant's claim.

*Propriety of Charges*

The appellant argues that the offenses of carnal knowledge and indecent acts were improperly charged and should be dismissed because the legal actions to bring him to trial on these offenses occurred after 1 October 2007. According to the appellant, Executive Order 13447 and the 2006 National Defense Authorization Act amended the *Manual for Courts-Martial*, and eliminated these two offenses. He argues that because the Executive Order states that nothing in the amendments would invalidate certain legal actions, to include investigations and referral of charges, that began prior to 1 October 2007, and the legal actions that preceded the appellant's trial occurred after that date, they were rendered invalid by the Executive Order because they occurred too late.

This argument is without merit. Executive Order 13447 and the 2006 National Defense Authorization Act did not eliminate these two offenses in the sense that no one could be prosecuted for them if legal action began after 1 October 2007. The Executive Order merely incorporated the amendments to Article 120, UCMJ, and other provisions. It did not bar prosecution of violations of the law as it was written prior to the amendments and the Executive Order.

These offenses were all alleged as perpetrated against a child between the ages of 12 and 16 years old. As such, each has a 25-year statute of limitations and may be prosecuted any time within that period. *See United States v. Lopez de Victoria*, 66 M.J. 67 (C.A.A.F. 2008). *See also* Article 43, UCMJ, 10 U.S.C. § 843; Drafter's Analysis, *Manual for Courts-Martial, United States*, A21-57, A27 (2012 ed.). The language cited by the appellant in the Executive Order does not bar the offense from being prosecuted.

*Review of CL's Mental Health and Medical Records*

The appellant next alleges that either the military judge or the Government denied him a fair trial by failing to provide him with relevant mental health and medical records of CL. The appellant alleges that the records he sought would have demonstrated that the charged acts occurred not in 2004 but in 2006, near the time she underwent a significant medical procedure.

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to a psychotherapist, in a case arising under the UCMJ, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a). However, no such privilege exists when the records are "constitutionally required." Mil. R. Evid. 513(d)(8). "To prevent unnecessary disclosure of evidence of a patient's records or communications, the military judge may issue protective orders or may admit only portions of the evidence." Mil. R. Evid. 513(e)(4).

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Jenkins*, 63 M.J. 426, 428 (C.A.A.F. 2006) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

At trial, the defense moved to compel production of CL's mental health records covered by Mil. R. Evid. 513. Trial counsel provided the appropriate records to the military judge; however after reviewing them *in camera*, he determined no records would be provided to the defense. The defense did not move to produce any of CL's medical records. While trial defense counsel did file a notice under Mil. R. Evid. 412 indicating a desire to cross-examine the victim about the alleged medical procedure, he abandoned the effort when he learned a Government witness would testify the procedure took place at a different time—a time trial defense counsel believed would be supported by the mental health records. Based on this, trial defense counsel twice told the military judge they no longer sought to pursue this matter.

We have reviewed the appellant's assignment of error, the defense's filings under Mil. R. Evid. 412 and 513, trial defense counsel's representations to the military judge, and the mental health records. We find no abuse of discretion in the military judge's decision not to release mental health records to the defense. We similarly find no basis for relief in trial defense counsel's decision not to pursue questioning about the alleged medical procedure. The decision of the defense to pursue this issue resulted from a lack of evidence to support the defense theory, not from any action of the military judge or the Government.

*Military Judge's Instructions on Force Elements*

The appellant alleges that the military judge's findings instructions concerning force in the forcible sodomy and rape specifications erred in three respects: (1) his instructions on the forcible sodomy specification erroneously lessened the Government's burden of proof by allowing the members to find force occurred simply on the basis of CL's age; (2) his instructions concerning the rape and forcible sodomy specifications improperly included the concept of constructive force; and (3) the military judge failed to give a "mistake of age" instruction.

Whether the military judge properly instructed the members is a question of law we review de novo. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). However, "[w]here there is no objection to an instruction at trial, we review for plain error." *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014).

We find no error—plain or otherwise—in the military judge's instructions. The military judge's instructions concerning the forcible sodomy specifications did not allow the members to find force solely because of CL's age; rather they properly presented CL's age as one factor the members could consider in determining whether CL was incapable of giving consent. The military judge's constructive force instruction was proper, as constructive force has long been held to satisfy the requirement of force under the version of Article 120, UCMJ, applicable to the time of the appellant's misconduct.[11] *See, e.g., United States v. Davis*, 52 M.J. 201, 203 (C.A.A.F. 1999). Finally, we find no plain error in the lack of a "mistake of age" instruction based on the lack of indication in the record of trial that the appellant was mistaken as to CL's age.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within

---

[11] The appellant was charged with raping CL on divers occasions between 1 July 2004 and 30 September 2004 in violation of Article 120, UCMJ, 10 U.S.C. § 920. *See Manual for Courts-Martial, United States*, A27-1 (2012 ed.).

18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was originally docketed for appellate review on 11 July 2011 and this Court rendered a decision on 18 July 2013. This exceeded the 18-month standard established in *Moreno* and is therefore facially unreasonable. We have examined the factors identified in *Barker* to determine whether the appellant suffered from a due process violation as a result of the delay. We find that no such due process violation occurred in the delay leading up to this Court's 18 July 2013 decision. In particular, the appellant has made no showing of prejudice under the fourth *Barker* factor. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

As for the time that has elapsed since this Court's 18 July 2013 decision, we find no due process violation. The *Moreno* standards continue to apply as a case continues through the appellate process. *Mackie*, 72 M.J. at 135–36. The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id*. at 136; *see also Roach*, 69 M.J. at 22. The time between our superior court's action to return the record of trial to our Court for our action and this decision did not exceed 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. Assuming the total appellate processing of this case raises a presumption of unreasonable delay, we again conclude the delay was harmless under the *Barker* analysis.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record;

the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter. The reason for the delay between 18 July 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[12] to appoint civilian employees to the service courts of criminal appeals. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

## *Sentence Reassessment*

Having dismissed Charge III and its Specification, we must determine whether we are able to reassess the sentence. Applying the analysis set forth in *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), we are confident that we can reassess the appellant's sentence to cure any prejudicial effect of the error in the defective specification. Under the four factors identified in *Winckelmann*, and analyzing this matter under the totality of the circumstances, we are confident that absent the defective specification, the appellant's sentence would not change from that adjudged and approved. *See Id.* at 15–16. We base this conclusion on three findings: (1) there has not been a dramatic change in the penalty landscape and exposure because conviction for forcible sodomy carried with it a maximum sentence to confinement of life; (2) the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses, and significant aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (3) the remaining offenses are of the type this Court has the experience and familiarity with to reliably determine what sentence would have been imposed at trial. We therefore reassess the appellant's sentence to the same sentence originally adjudged and approved.

## *Conclusion*

We set aside and dismiss Charge III and its Specification and affirm the remaining findings and the sentence as approved by the convening authority. The approved findings, as modified, and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant regarding the affirmed charges and specifications occurred. Articles 59(a) and 66(c), UCMJ.

---

[12] U.S. CONST. art II § 2, cl 2.

Accordingly, the findings, as modified, and the sentence, are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 37957 (recon)